**UNITED STATES of America**

v.

**Richard Terry RUUSKA**

**Appeal of Richard T. RUUSKA.**

**No. 88–3780.**

United States Court of Appeals,
Third Circuit.

Argued June 29, 1989.

Decided Aug. 28, 1989.

George E. Schumacher, Federal Public Defender and David G. Rothey, Asst. Federal Public Defender (argued), Pittsburgh, Pa., for appellant.

Charles D. Sheehy, Acting U.S. Atty., Bonnie R. Schlueter, Asst. U.S. Atty., Paul J. Brysh and Constance M. Bowden (argued) Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendant Richard Ruuska was charged in an eleven count indictment. After a jury trial, Ruuska was convicted and sentenced on three counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 1, 2 and 5), and six counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 6, 7, 8, 9, 10 and 11). The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over Ruuska's appeal by virtue of 28 U.S.C. § 1291.

### Sufficiency of the Evidence

We first address defendant Ruuska's contention that the district court erred in denying his motion for acquittal on Counts 8, 9, 10 and 11. Ruuska argues that the evidence was insufficient to support his conviction on these Counts. We will only reverse a conviction where the evidence, viewed in the light most favorable to the government, could not support a finding of the essential elements of the crime beyond a reasonable doubt by any rational trier of fact. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In relevant part, the indictment in this case alleged a scheme and artifice to defraud in which defendant Ruuska received the money of, among others, retiree John Drozd, his sister, and his then 73–year old girlfriend Grace Roth, as investments in three companies, Companie Belga Caribe Internacional, S.A. ("Cobeca"), purportedly a cantaloupe growing business, PENSYS, an air purification company, and Lady Mayfair Salon, a health club company. Evidence at trial permitted the jury to conclude that Ruuska made material misrepresentations to potential investors about himself and these investments, and that he converted investment monies to his personal use.

Ruuska contends that the evidence was insufficient to support his conviction of mail fraud on counts 8, 9, 10 and 11. He

argues that the evidence was insufficient to support a conclusion that the mailings on which the government relied in each of those counts were "for the purpose of executing" the alleged scheme to defraud, as required by 18 U.S.C. § 1341. The basis for Ruuska's argument is that the mailings charged in counts 8 through 11 were sent after April, 1985, when Drozd's attorney and accountant raised questions with Ruuska, had him sign promissory notes in the full amount of the investments, and first suggested to Drozd that he had been "scammed."

The mail fraud statute prohibits the use of the mails "for the purpose of executing" a scheme to defraud. 18 U.S.C. § 1341. To support a mail fraud conviction, a mailing must further the scheme to defraud or be incident to an essential part of that scheme. *See, e.g., United States v. Otto*, 742 F.2d 104 (3d Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985). A mailing sent after the object of a scheme has been accomplished is not sufficiently closely related to the scheme to support a mail fraud conviction. *United States v. Lebovitz*, 669 F.2d 894, 896 (3d Cir.), *cert. denied*, 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). "However, the object of a scheme is not necessarily accomplished at the moment when the perpetrator of the scheme receives the fruits of the scheme." *Id.* As Ruuska recognizes, subsequent mailings may be "for the purpose of executing" the scheme if they were, for example, "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." *United States v. Lane*, 474 U.S. 438, 451–52, 106 S.Ct. 725, 733, 88 L.Ed.2d 814 (1986) (quoting *United States v. Maze*, 414 U.S. 395, 403, 94 S.Ct. 645, 650, 38 L.Ed.2d 603 (1974)). In one instance, the Supreme Court has upheld mail fraud counts based on mailings that "attempt[ed] to convince the victims that they had not been defrauded and that the defendants were performing meaningful services on their behalves," after the money had actually been given

over by the victims to the defendants. *See United States v. Sampson*, 371 U.S. 75, 80–81, 83 S.Ct. 173, 175–176, 9 L.Ed.2d 136 (1962).

The mailings charged in Counts 8 and 9 are identical letters on Cobeca stationery dated July 4, 1985, and sent to John Drozd and Grace Roth. These letters read:

We wish to inform our Joint Venture relationships of the present situation concerning the Cantaloupe projects in the Dominican Republic.

This brief informative letter should have been sent at least sixty days ago. We regret the delay, but it was unavoidable. Innuendo and conjecture were initiated without warrant against the organization, personnel and projects. Thus, we chose to delay communication until we developed a true picture of the situation. Therefore, at this time we've been able to completely dispel these negative forces.

The U.S. Embassy in Santo Domingo, Dominican Republic and the U.S. Department of Commerce have provided assistance to help us remedy the situation.

Transportation problems evolved into substantial insurance claims, with possible lawsuits being initiated to recover the losses sustained over the project duration. This has been the primary cause of the delay in any monetary return from the Joint Venture.

The financial aspects of the projects are being determined by the present negotiations and litigation, with reference to monetary return and time of such receipt.

Additional support documents have been sent to Mr. Drozd.

Thank you for your cooperation and patience in this vital matter of extreme importance to yourself.

Ruuska argues that these letters "did not seek to create a false sense of security." He argues further that he was "incapable of lulling Drozd at that point." Our inquiry, of course, is not whether the defendant was likely to succeed in lulling the recipients into a false sense of security,

but rather whether these letters were designed so to do. Again, in examining the sufficiency of the evidence to support these convictions, we must view it in the light most favorable to the government, *United States v. Lebovitz*, 669 F.2d at 896–97.

These letters stated that the "primary cause of the delay in any monetary return" from the cantaloupe venture had been "transportation problems" that "evolved into substantial insurance claims, with possible lawsuits being initiated to recover the losses sustained over the project duration." The letters stated that "the financial aspects of the projects are being determined by the present negotiations and litigation, with reference to monetary return and time of such receipt," and thanked Drozd and Roth for their "cooperation and patience."

Such letters support an inference by the jury that they "were mailed by the defendants to the victims for the purpose of lulling them by assurances that the promised services would be performed." *United States v. Sampson*, 371 U.S. at 81, 83 S.Ct. at 176. We therefore have no difficulty in concluding that there was evidence sufficient to support a mail fraud conviction on counts 8 and 9.

The mailing charged in Count 10 is a letter from Ruuska to Drozd dated September 16, 1985. This letter states that

I sincerely regret the past and present circumstances surrounding your joint venture relationship with Cobeca. I assure you that not one dollar will be lost, but earn you the return you deserve.

I'm aware of the innuendo and conjecture statements made by several individuals.... None of which can be substantiated, because no one had knowledge. I do not discuss my business with anyone outside the business. In the very near future, they'll have to support their statements which I know they cannot.

I've investigated the problems that Cobeca had, and now I've complete working knowledge of the entire situation. All will be resolved in a short period of time.

With all the inquiries made into the operation, no one has been able to prove any of the allegations, innuendo or conjecture made about us. What was stated would be done, was accomplished by us. Difficulties arose out of normal business problems, a situation beyond our control.

One lawsuit has been filed in a U.S. District Court, and now we're filing in the courts in Santo Domingo. We cannot file in the U.S.A., because we would not receive the proper payment due to us. All legal avenues are being pursued at this time.

A state Senator, who has a joint venture relationship with us, recently went to Santo Domingo. He found not one impropriety of any kind. He was satisfied as to the nature of the problems. He's now waiting for us to resolve these problems, and he's interested to continue with us. Therefore, he has confidence and trust in us.

All monies you placed with Cobeca, Pensys, and the Salon will earn you the return you expected. But, taking into consideration the present circumstances, I feel morally obligated to return to you these monies as soon as possible. This includes your girlfriend and sister. I'm making arrangements for this at this time. All monies were used as discussed and for the intended purpose. Circumstances beyond my control caused the problems.

As you well know, I signed several Promissory Notes with you pertaining to the monies, and therefore I'm responsible as this becomes a personal loan from you to me. Your accountant had me sign these notes.

\*      \*      \*      \*      \*      \*

No one will sustain a loss of any kind with any project I'm involved in. There's been not one impropriety of any kind. At best, poor judgment was used in many circumstances, and nothing else.

\*      \*      \*      \*      \*      \*

My only course of action at the present time is to resolve any and all problems.

Thank you for your patience, time and cooperation.

Again, we have no difficulty in concluding that a jury could find that this letter was designed to lull the victims into a false sense of security. The jury could have reached the same conclusion concerning the mailing charged in Count 11. The substance of this mailing, a cablegram that states "[b]ased on loan notes signed am prepared to repay with interest per note. Advise acceptance. Sent to Apartado Postal 66279 El Dorado. Panama, Rep. De Panama," is similar to portions of the letter charged in Count 10. The district court therefore did not err in denying the defendant's motion for acquittal on Counts 8, 9, 10 and 11.[1] Although we are hereinafter granting the defendant a new trial for an unrelated reason, the government will be free to reassert such counts.

### Peremptory Challenge

Ruuska next argues that he was denied his right to exercise a peremptory challenge of the juror who was ultimately seated in jury seat Number 9. The jury in this case was chosen according to the "struck jury" system. Thirty two potential jurors were chosen from the venire. Those struck for cause were replaced by other members of the venire. When this panel contained 32 members against whom there were no challenges for cause, counsel were permitted to exercise their peremptory challenges until 12 jurors and two alternates remained. Under this procedure, both sides were required to, and did, exercise all their allotted peremptory challenges. *See* Fed. R.Crim.P. 24(b), 24(c).[2]

After voir dire and the seating of the jury, but before the jury was sworn, the juror in seat Number 9, William Nichols, rose and stated "I feel that I have sympathies for the defendant there; possibly, if I could be excused from this panel." Nichols was then interviewed in chambers by the district court where he stated "I feel sympathies for any defendant in a criminal or civil lawsuit. That's just the way my make-up is. My heart cries out for him." The district judge excused Nichols. The defense made a motion for a mistrial, which was denied.

Rather than replacing Nichols with an alternate, the district court chose to draw another person from the venire. While Ruuska contends this was error, we need not address that contention in view of our ultimate disposition of the case. The district court, the deputy clerk and counsel for the parties discussed the process to be used in replacing juror Nichols:

Deputy Clerk: I brought in 45 people for a minimum of 32 jurors. We [dismissed] two for cause, so that means I have nine or ten names left that were not called at all. I'll put those names in the wheel and spin it and draw an individual, and if that juror is agreeable to both counsel, then he will be the juror to replace the one we just let go.

Prosecutor: That's perfectly acceptable to me.

Defense counsel: Do we have any strikes, your honor, at this point? I'm not sure what standing we have.

The court: What kind of strikes?

Defense counsel: In terms of who it is, these particular individuals that—

The court: They're only going to have one there; is that right?

Deputy Clerk: That's it. I'm only going to bring up one to replace the juror that was released.

The court: So if you object to him—

Deputy clerk: Then I'll bring up another individual to replace that one.

---

1. The defendant has not challenged the district court's jury instruction on what constitutes use of the mails "for purposes of executing" a scheme to defraud.

2. The rule provides that in the case of a non-capital offense such as mail fraud punishable by imprisonment for more than one year, "the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges." Fed.R.Crim.P. 24(b). Where, as here, two alternates are used, "[e]ach side is entitled to 1 peremptory challenge in addition to those otherwise allowed by law." Fed.R.Crim.P. 24(c). There has been no challenge to the procedure used in the district court on the ground that it did not provide for separate challenges to alternate jurors as required by Rule 24(c).

Defense counsel: All right. Okay.

The court: Okay.

The parties agree that the district court granted the defendants a peremptory challenge. As the government put it at oral argument, the district court meant "for the defendant to be able to exercise a peremptory challenge if he wanted to." We think that is a fair reading of the quoted materials. No party contends that granting an additional peremptory challenge here was cognizable error.

Joseph Blizman was selected from the venire. After the deputy clerk, outside the presence of the district judge, asked juror Blizman certain voir dire questions,[3] the deputy clerk inquired as to whether either counsel objected to Blizman. The following discussion took place:

> Deputy Clerk: Any objections to that juror?
>
> Prosecutor: No, perfectly fine.
>
> Defense counsel: We are objecting, though. There's something else that just was brought to my attention by the defendant.
>
> \*    \*    \*    \*    \*    \*
>
> (Judge enters courtroom)
>
> The court: For the prosecution, is this the jury that you selected to try the case of United States versus Richard Ruuska, 87–207?
>
> Prosecutor: Yes, it is, your honor.
>
> The court: Are you satisfied it is correctly selected?
>
> Prosecutor: Yes, your honor, we are.
>
> The court: For the defense?
>
> Defense counsel: Your honor, we are not. We have checked; we object to the seating of the last juror, and also the failure to ask the question we requested.
>
> The court: Well, we're going to ask that of the whole jury panel.
>
> (Discussion off the record)
>
> The court: It has been asked, and everybody said no.

> Defense counsel: Right. I understand, your honor.
>
> The court: What is your objection?
>
> Defense counsel: I still object, and renew our motion made in chambers.
>
> The court: I can't hear you.
>
> Defense counsel: We would still object, your honor, and renew our motion made in chambers, if we might.
>
> The court: I am going to continue the same ruling.
>
> Defense counsel: Alright, thank you.
>
> The court: Swear the jury. (The jury was sworn.)

▮ The next day, prior to opening statements, the defense again objected to the seating of juror Blizman. Defense counsel stated "I objected to the procedure by which he was sat. I also object to Mr. Blizman being sat as juror No. 9 in the case." The defense moved the district court to strike juror Blizman and to elevate alternate Number 1 to Blizman's seat. The district court stated its belief that the defense had not made a peremptory challenge the previous day, and denied the motion as untimely. Defense counsel argued that he had objected to Blizman individually the previous day, and moved for a mistrial. The district court first granted a mistrial, but later reversed itself. Defense counsel repeated his objection. The trial then proceeded, with Blizman seated as juror Number 9.

The government concedes that if the defense made a timely attempt to exercise its peremptory challenge to juror Blizman, the district court's failure to strike juror Blizman was error. As an initial matter, however, the government argues that the defense did not attempt to make a peremptory challenge. Rather, the government contends that the defense merely renewed its motion for a mistrial and objected to the procedure used for replacing juror Nichols.

Whatever else the defense objected to, we think the only reasonable way to read this record is as an attempt to exercise a peremptory challenge to juror Blizman.

**3.** In view of our conclusion, we need not determine whether this procedure constituted reversible error. *See Gomez v. United States,* — U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989)

(finding reversible error where, over the express objections of defense counsel, magistrate conducted voir dire outside presence of district judge).

When the deputy clerk asked whether there were "[a]ny objections to that juror," defense counsel responded "we are objecting." This objection was repeated before the judge several times before the jury was sworn. We conclude that this constituted a timely attempt by the defense to exercise the peremptory challenge granted by the court.

■ The government next argues that even if an impairment of Ruuska's right to exercise peremptory challenges did occur, it was not an error affecting a substantial right of the defendant. The government's invitation to engage in harmless error analysis misperceives the nature of the right to exercise peremptory challenges.

It is true that the right to peremptory challenges is not constitutional, but rather "in the nature of a statutory privilege, which may be withheld altogether without impairing the constitutional guaranties of an 'impartial jury' and a fair trial." *Frazier v. United States*, 335 U.S. 497, 505 n. 11, 69 S.Ct. 201, 206 n. 11, 93 L.Ed. 187 (1948). Still,

> [a]lthough "[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges," *Stilson v. United States*, 250 U.S. 583, 586 [40 S.Ct. 28, 30, 63 L.Ed. 1154], nonetheless, the challenge is "one of the most important rights secured by the accused." *Pointer v. United States*, 151 U.S. 396, 408 [14 S.Ct. 410, 414, 38 L.Ed. 208]. *The denial or impairment of the right is reversible error without a showing of prejudice,* Lewis v. United States, [146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011]; *Harrison v. United States*, 163 U.S. 140 [16 S.Ct. 961,

41 L.Ed. 104]; *cf. Gulf, Colorado & Santa Fe R. Co. v. Shane*, 157 U.S. 348 [15 S.Ct. 641, 39 L.Ed. 727]. "For it is as Blackstone says, an arbitrary and capricious right, and it must be exercised with full freedom, or it fails its full purpose." *Lewis v. United States, supra* [146 U.S.], at 378 [13 S.Ct. at 139].

*Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) (emphasis added).

We read the long line of Supreme Court authority that culminated with *Swain* to say that the denial or impairment of the right to peremptory challenges is reversible error *per se. See id.; see also, e.g., St. Clair v. United States*, 154 U.S. 134, 148, 14 S.Ct. 1002, 1008, 38 L.Ed. 936 (1894); *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894) ("Any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned.").[4] The impairment of this right, therefore, cannot be dismissed as harmless.[5]

### Conclusion

Consequently, we will reverse the judgment of the district court and remand for a new trial. We need not address Ruuska's additional contentions of trial error because, given their nature, we think it more appropriate for them to be considered by the district court should the same issues arise on retrial.

---

**4.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which overruled *Swain* in part, dealt with the unconstitutionally discriminatory use of peremptory challenges by a prosecutor and does not call into question this aspect of *Swain* or the cases that preceded it. *See, e.g., United States v. Ricks*, 802 F.2d 731 (4th Cir.) (in banc) (stating after *Batson* that denial or impairment of right to peremptory challenges is reversible error without showing of prejudice), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986); *United States v. Mosely*, 810 F.2d 93, 96 (6th Cir.) (same), *cert. denied*, 484 U.S. 841, 108 S.Ct. 129, 98 L.Ed.2d 87 (1987).

**5.** The single case cited by the government in support of its suggested harmless error approach, *United States v. Alessandrello*, is not to the contrary. In that case, this court found that the record did not support a conclusion that the defense's peremptory challenges were impermissibly controlled by the court. *See United States v. Alessandrello*, 637 F.2d 131, 142–44 (3d Cir. 1980), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981). The court engaged in harmless error analysis in that case only with regard to a violation of Rule 43 of the Federal Rules of Criminal Procedure. *Id.*