

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-1994

# United States v. Frey

Precedential or Non-Precedential:

Docket 94-1594

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States v. Frey" (1994). *1994 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NOS. 94-1594 and 94-1605


UNITED STATES OF AMERICA,

Appellee,

v.

FRED FREY AND ROBERT DEMAS,

Fred Frey, Appellant in No. 94-1594
Robert Demas, Appellant in No. 94-1605


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 93-440-1 and 93-440-2


Submitted Under Third Circuit LAR 34.1(a)
December 2, 1994


Before: HUTCHINSON, NYGAARD and SEITZ, Circuit Judges.

Filed: December 13, 1994


John Rogers Carroll, Esquire
Ellen C. Brotman, Esquire
Carroll & Carroll
400 Market Street, Suite 850
Philadelphia, PA 19106
  Attorneys for Appellants

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant United States Attorney
615 Chestnut Street, Room 1250
Philadelphia, PA 19106
  Attorneys for Appellee

---

**OPINION OF THE COURT**

**SEITZ**, <u>Circuit Judge</u>.

Fred Frey and Robert Demas ("defendants") appeal their sentences after convictions by a jury on four counts of wire fraud under 18 U.S.C. § 1343 and two counts of mail fraud under 18 U.S.C. § 1341.

The fraud arose from a scheme by defendants to purport to buy a non-existent boat. Defendants borrowed money to pay for the boat, they insured it and then they reported it missing. They planned to repay the loan with the insurance proceeds and intended to profit by retaining the loan money. Thus, they had proposed to make the insurance company the ultimate victim. The scheme was discovered and defendants were found guilty and sentenced. This appeal followed.

## A. Defendants' Motion for Acquittal

The defendants first contend that because of the insufficiency of the government's proof the district court erred in denying their Rule 29 motion for acquittal on Counts 2, 4, 5, and 7. These counts were based on telephone calls and mailings between Anne Scarlata ("Scarlata") of Admiralty Documentation Services and the defendants.

The elements required to support a conviction under the mail fraud statute, 18 U.S.C. § 1341, are: 1) a scheme to

defraud;[1] and 2) the use of the mails for the purpose of executing, or attempting to execute, the scheme. See 18 U.S.C. § 1341 (1988 & Supp. III 1993); United States v. Copple, 24 F.3d 535, 544 (3d Cir.), cert. denied, (No. 94-5771), 1994 WL 466503 (Nov. 7, 1994); United States v. Ruuska, 883 F.2d 263, 264 (3d Cir. 1989). The wire fraud statute, 18 U.S.C. § 1343, is identical to the mail fraud statute except it speaks of communications transmitted by wire. See 18 U.S.C. § 1343 (1988 & Supp. III 1993); United States v. Zauber, 857 F.2d 137, 142 (3d Cir. 1988), cert. denied, 489 U.S. 1066 (1989).[2]

As defendants correctly point out, not every use of the mails or wires in connection with a scheme is punishable under sections 1341 or 1343. This court has held, "To support a mail fraud conviction, a mailing must further the scheme to defraud or be incident to an essential part of that scheme." Ruuska, 883 F.2d at 264; see United States v. Otto, 742 F.2d 104, 108 (3d Cir. 1984), cert. denied, 469 U.S. 1196 (1985).

In financing the boat, General Motors Acceptance Corporation ("GMAC") had to secure a federal lien on the boat. In order to secure the federal lien, GMAC contacted Admiralty Documentation Services, operated by Scarlata, to perform a title

---

[1]. Defendants admitted that they have engaged in a scheme to defraud. See, e.g., Brief of Defendants at 7-8, United States v. Frey and Demas (Nos. 94-1594 & 94-1605) (hereinafter "Defendants' Br."); Appendix at 195A-96A, 398A, 403A.

[2]. This court stated, "[T]he cases construing the mail fraud statute are applicable to the wire fraud statute as well." United States v. Tarnopol, 561 F.2d 466, 475 (3d Cir. 1977); see United States v. Bentz, 21 F.3d 37, 40 (3d Cir. 1994).

search.  In her efforts to properly search the boat's title, Scarlata exchanged numerous telephone calls and letters with defendants.  These exchanges provided the mailings and wirings requirements in four counts of the indictment.

Defendants argue that the exchanges with Scarlata were not made in furtherance of the scheme to defraud because they 1) were made after the scheme had come to fruition; and 2) served to frustrate, not further, the scheme.

Defendants' argument that their scheme had come to fruition when the loan was granted misconstrues the nature of the indictment, which charged an overall scheme to defraud GMAC, General Sales, Hampton Roads Documentation Services, Admiralty Documentation Services, Guba and Associates, Hull and Company, and Lloyds of London. See Appendix at 503A (the federal indictment); see also United States v. Lane, 474 U.S. 438, 452 (1986).  In fact, defendants have agreed with the government's characterization of the scheme, see Defendants' Br. at 7-8, and have stated that the Scarlata communications occurred during the scheme. See id. at 17.  The government charged one scheme, not a series of schemes.  At the time of the Scarlata communications, the boat was not yet reported stolen or missing.  Based on the evidence presented, we conclude that a reasonable jury could find that the scheme to defraud had not been concluded before the Scarlata communications took place.

Defendants next argue that their communications with Scarlata were routine business mailings and calls that

contributed to the eventual unravelling of the scheme and cannot support a mail or wire fraud conviction.

This court has held that "the mere classification of a letter as a `routine business mailing' is [not] a defense to mail fraud." United States v. Brown, 583 F.2d 659, 668 (3d Cir. 1978), cert. denied, 440 U.S. 909 (1979). The mailing, or wiring, could support a mail or wire fraud conviction "if the mailing is part of executing the fraud, or closely related to the scheme . . . even though the mailing was also related to a valid business purpose." Id. As the United States Supreme Court has stated, "[M]ailings [and wirings] which facilitate concealment of the scheme are covered by the statute." Lane, 474 U.S. at 453 (internal quotations omitted) (footnote omitted). Defendants' evaluation of the evidence lacks merit.

Defendants assert that the communications were not "closely related to the scheme" because they tended to "unravel" rather than further the scheme and thus were not probative of the scheme. Generally, mailings or wirings that serve to put the defrauded party on notice, or make the execution of the fraud less likely, cannot support a conviction under the mail or wire fraud statutes. See Otto, 742 F.2d at 109; Tarnopol, 561 F.2d at 473. The cases cited by defendants in support of their argument that the Scarlata communications were not closely related to the scheme, however, involved situations where the only effect of the communications was to frustrate the scheme. See, e.g., United States v. Maze, 414 U.S. 395 (1974); United States v. Kann, 323

U.S. 88 (1944). In this case, the communications were incident to an essential part of defendants' scheme to defraud.

Furthermore, defendants needed the Scarlata communications either to conceal the fraud or further their scheme. See Appendix at 245A, 248A (Scarlata testimony regarding defendants' cooperation). The evidence established that the Scarlata communications were made in the course of securing a federal lien. It is both common for a finance company to secure a federal lien on a loan of this size and to have the boat documented. See Appendix at 200A; see also id. at 200A-02A, 234A, 240A, 258A. In addition, a letter from GMAC to Scarlata was introduced which listed Frey as a customer "required to have Marine Documentation." Government's Appendix at 11a. In fact, the documentation in this case was required by law. See id. at 213A, 258A.

At trial, Mr. Hamilton of GMAC testified that if GMAC were unable to perfect a lien or verify title on the Frey/Demas boat, then General Sales, the company defendants contacted to arrange the financing through GMAC, would be asked to pay off the boat loan. Id. at 260A. Here, the jury could have reasonably concluded that defendants communicated with Scarlata in order to either further their scheme or to facilitate the concealment of the scheme. If the fraud had been uncovered, defendants' scheme could have come to an abrupt halt. See Schmuck v. United States, 489 U.S. 705, 712 (1988). These communications were at least incidental to the scheme.

Although the communications with Scarlata may have hastened the uncovering of the fraud, this factor does not necessarily preclude the conclusion that these communications support the mail or wire fraud convictions. In Schmuck, the United States Supreme Court stated:

> We . . . reject . . . [the] contention that mailings that someday may contribute to the uncovering of a fraudulent scheme cannot supply the mailing element of the mail fraud offense. The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud.

Id. at 715.

Defendants argue that unlike the scheme in Schmuck, the present scheme did not involve "an ongoing fraudulent venture." Defendants' Reply Brief at 3, United States v. Frey and Demas (Nos. 94-1594 & 94-1605). In the present case, as in Schmuck, to successfully complete the fraudulent scheme, defendants had to maintain the illusion of the existence of the fictitious boat (at least until the insurance proceeds were paid). At the time of the communications, the mailings and wirings were not routine, post-fraud, or merely coincidental to the scheme, they were a part of the execution of the scheme. We do not find defendants' argument persuasive here.

Defendants next assert that the district court erred in not granting their motion for acquittal on Counts 1 and 6 of the indictment because the United States did not prove that the

communications supporting those counts were made for the purpose of executing the scheme.

On July 11, 1989, Frey was contacted with an insurance quote on the boat. Defendants contend that this communication could not be "in furtherance of the scheme" because Frey provided Guba with the incorrect Hull Identification Number (HIN). As Ms. Stanley, from Guba and Associates, testified, a HIN is not even required to provide an insurance quote. See Appendix at 113A. The boat had many other distinguishing features, see, e.g., id. at 93A, and the number would eventually be used for identification. However, the evidence at trial could reasonably support the conclusion that Guba and defendants were discussing the same boat. The GMAC finance application required defendants to maintain insurance on the boat. See Government's Appendix at 9a; Appendix at 401A; 477A. We conclude that a reasonable trier of fact could find that the July 11, 1989 call was a step in defendants' scheme to defraud by securing insurance as required under the finance contract and to repay the loan.

Also, defendants argue that the January 18, 1990 call to Guba and Associates could not be "in furtherance of the scheme" because they had failed to comply with a warranty in the insurance contract, which required defendants to store the boat in an enclosed facility. Thus, defendants argue that "[t]he scheme had no chance from the outset because there was no coverage for the selected fictional location." Defendants' Br. at 18.

It is apparent that defendants' argument goes to the ultimate success of the fraud. This court has stated that the success of the scheme is not relevant in a mail or wire fraud conviction; it is sufficient that the defendant had the intent to defraud. See Zauber, 857 F.2d at 142; see also Copple, 24 F.3d at 544-45. In the present case, defendants' failure to comply with the contract warranty may have resulted in a denial of coverage. But, what is relevant is defendants' intent to defraud. By convicting defendants, the jury implicitly concluded that defendants possessed the requisite intent to defraud. On January 18, 1990, the scheme was still alive, and a reasonable juror could have found that the report to the insurance company was a planned step in the scheme. As defendants admitted, they had to collect the insurance proceeds so as not to have to personally repay the loan.

Defendants also argue that GMAC was not at risk of loss because the loan was a full recourse loan, with General Sales guaranteeing the GMAC loan, and because the GMAC loan was to be satisfied with the loan proceeds. See Defendants' Br. at 17. The government charged that the insurance company, not GMAC, would suffer a loss of money. A reasonable trier of fact could have concluded that the calls to and from Guba and Associates were in furtherance of defendants' scheme to ultimately cause the insurance company monetary loss.

We conclude that the district court did not err in denying defendants' motion for acquittal.

## B. Defendants' Proposed Jury Instruction

Defendants argue that the district court erred in refusing to give proposed Jury Instructions numbers 10, 11, 12, and 16, which allegedly stated defendants' theories of defense.

As the Supreme Court stated, "[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Matthews v. United States, 485 U.S. 58, 63 (1988); see United States v. Paolello, 951 F.2d 537, 539 (3d Cir. 1991).

Proposed Jury Instruction 11 focused on defendants' allegation that GMAC would not suffer any loss. As explained above, the government did not charge that GMAC was the ultimate victim. See Appendix at 503A. Therefore, defendants' claim that GMAC was not at a risk of loss would not provide a defense to the charges.

Defendants' proposed Jury Instructions 10 and 12 focused on defendants' allegation that the insurance policy would not provide coverage for the claimed loss. Defendants requested that the jury be instructed that the government had the burden of proving that the policy would in fact cover their loss.

Defendants' asked the district court, and now this court, to effectively add an element to the mail and wire fraud statutes. As explained, these arguments go to the success of the scheme, which is not an element of the statutes. See Copple, 24 F.3d at 544-45; Zauber, 857 F.2d at 142. The indictment did not charge the ultimate success of the plot, but rather the scheme to defraud. As explained above, the communications relating to

proposed instructions 10 and 12 were essential steps in the plot. Therefore, neither proposed instruction 10 nor 12 would provide a recognized defense to defendants' convictions.

Finally, defendants' proposed Jury Instruction 16 referred specifically to the different HINs. Defendants asked the district court to instruct the jury that the government had the burden of proving that the telephone call alleged in Count 1 of the federal indictment was in furtherance of the scheme to obtain coverage on HIN WELP 5148H889. As explained at trial, the HIN was not important to the July 11, 1989 phone call. The call was an essential part of defendants' efforts to obtain insurance proceeds to pay the fraudulently obtained loan. The government was only required to prove that the call was in furtherance of their scheme to defraud. Again, the ultimate success of the scheme is irrelevant.

As this court explained, even if the evidence supports defendants' theories of defense, the court will examine the district court's instructions as a whole to determine whether they adequately presented these theories of defense to the jury. See Paolello, 951 F.2d at 539. In this case, the district court charged the jury that the government had the burden of proving that all the communications were made in furtherance of the charged scheme. See Appendix at 438A. The trial testimony and exhibits advised the jury of the facts surrounding Counts 1 and 6. Even if defendants were correct as to the existence of their theories of defense, the court's charge adequately addressed them.

The district court committed no error by declining to give these requested instructions.

The judgments of the district court will be affirmed.

_____