UNITED STATES of America, Plaintiff,

v.

**Robert FAUVER, Defendant.**

No. 3:CR–94–300.

United States District Court, M.D. Pennsylvania.

May 9, 1995.

David B. Keefe, Sayre, PA, Robert Fauver, Athens, PA, for defendant.

Gordon Alan Daniel Zubrod, Asst. U.S. Atty., Harrisburg, PA, for the U.S.

### *MEMORANDUM*

VANASKIE, District Judge.

Defendant Robert Fauver, the former Warden of the Bradford County Prison, Bradford County, Pennsylvania, has been charged with mail fraud and money laundering arising out of his alleged misappropriation of funds that were intended to benefit the Bradford County Prison and its inmates. Specifically, the Grand Jury Indictment, returned on November 22, 1994, accuses Fauver of cashing five checks mailed to the Bradford County Prison by Business Telecommunication Systems, Inc. of New York ("BTSI"), and applying the proceeds for his personal use instead of depositing those checks in the Prison Inmates' Commissary Fund. The specific uses of the mail charged in the Indictment occurred on November 12, 1990, September 27 and November 26, 1991, and February 26, 1992. The amount involved in those mailings is less than $5,000.

Contending that the mailing of the checks by BTSI pursuant to a valid contractual obligation between Bradford County and BTSI cannot be regarded as having been made in furtherance of the alleged fraudulent scheme, Fauver has moved to dismiss the Indictment.[1] If the mailings in question had been addressed to either Bradford County or the Bradford County Prison, there would be substantial merit to Fauver's argument. However, the Indictment charges that the mailings were addressed to Fauver himself. The Government argues that the checks were addressed to Fauver to enable Fauver to misappropriate the checks without receipt of the checks being recorded on Bradford County's books. It is this contention, suggesting a proximate connection between the use of the mails and Fauver's diversion of prison funds, which makes dismissal of the Indictment at this stage inappropriate.

1. The Government concedes that the money laundering offense charged in Count V of the Indictment is dependent upon the mail fraud counts, so that if the mail fraud counts are dismissed then the money laundering count must also be dismissed.

### *BACKGROUND*

Fauver served as the Warden of the Bradford County Prison from October of 1986 until January 29, 1993. He was appointed to this position by the Bradford County Commissioners.

Pursuant to a contract dated May 9, 1988, BTSI agreed to supply telephone services to the Bradford County Prison for an inmate "call-home" program. Under the agreement, BTSI was granted a license to install phones at the Bradford County Prison, and the Prison, as licensor, was to receive a license fee payable on a monthly basis. The amount of the fee was dependent upon phone usage. Fauver signed the agreement on behalf of the Bradford County Prison.[2]

Checks issued by BTSI in payment of its contractual obligations were made payable to the Bradford County Jail and were delivered via the United States mail addressed to Fauver, Warden, Bradford County Jail, Troy, PA. The checks were to be deposited into the Inmates' Commissary Fund account at the National Bank of Bradford County.

The Indictment charges that from November, 1990 until January, 1993, Fauver engaged in a scheme to misappropriate payments made by BTSI and thereby deprive the citizens of Bradford County and the Bradford County Commissioners "of their right to his honest and faithful services...." The Indictment further charges that, as part of the scheme to defraud, Fauver took checks "which had been mailed to the Bradford County Prison by [BTSI] and, instead of depositing those checks in the Inmates' Commissary Fund, would cash the checks and apply the proceeds for his personal use."

Four specific instances of mail fraud are charged. In each instance, the use of the mails upon which the Indictment is premised consisted of the sending of a check or checks from BTSI to the following addressee:

2. The written agreement contained a term of 120 days. The Indictment does not allege that the contract executed in May of 1988 was extended. Nevertheless, the phones remained at the Bradford County Prison and the monthly check arrangement continued through 1992.

Bradford County
Jail Road 3
Route 6, Box 321
Troy, PA 16947 [3]

On December 28, 1994, Fauver moved to dismiss the Indictment. A supporting brief was filed on January 10, 1995.[4] The Government's opposing brief was filed on January 9, 1995. A reply brief was timely submitted on January 18, 1995. Oral argument was conducted on March 21, 1995. This matter is thus ripe for disposition.

## DISCUSSION

"In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian,* 910 F.2d 1153, 1154 (3rd Cir.1990). The question is whether, accepting as true the indictment's averments, a federal crime has been alleged. *United States v. Waldrop,* 786 F.Supp. 1194, 1199 (M.D.Pa.1991), *aff'd mem.,* 983 F.2d 1054 (3rd Cir.1992). In this case, the fundamental issue is whether the Indictment alleges facts that support prosecution for mail fraud under 18 U.S.C. § 1341.

Section 1341 of Title 18 U.S.C., in pertinent part, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... *for the purpose of executing such scheme or artifice or attempting so to do,* places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five (5) years or both. [Emphasis added.]

"The elements required to support a conviction under the mail fraud statute ... are: (1) a scheme to defraud; and (2) the use of the mails for the purpose of executing, or attempting to execute, the scheme."[5] *United States v. Frey,* 42 F.3d 795, 797 (3rd Cir. 1994). "[T]he gist of the crime is the use of the mails for the purpose of executing a scheme to defraud." *United States v. Tarnopol,* 561 F.2d 466, 471 (3rd Cir.1977). Our Supreme Court has reiterated that "[t]he federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States,* 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944), *quoted* in *Parr v. United States,* 363 U.S. 370, 389–90, 80 S.Ct. 1171, 1182–83, 4 L.Ed.2d 1277 (1960); *Schmuck v. United States,* 489 U.S. 705, 710, 109 S.Ct. 1443, 1447–48, 103 L.Ed.2d 734 (1989).

"To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme." *Schmuck,* 489 U.S. at 710, 109 S.Ct. at 1448. "Rather, so long as the mailings are 'incident to an essential part of the scheme,' the mailing element is satisfied." *Tabas v. Tabas,* 47 F.3d 1280, 1294 n. 18 (3rd Cir.1995) (*en banc*). Use of the mails as " 'a step in [the]

---

3. In the Introduction to the Indictment, it is alleged that the checks "were delivered via the United States mail addressed to **ROBERT FAUVER,** Warden, Bradford County Jail, Troy, PA." No explanation has been provided as to why the mailings alleged in the charging section of the Indictment identify the Addressee as Bradford County Jail. For purposes of disposition of the motion to dismiss the Indictment, the allegation that the checks were addressed to Fauver has been accepted as true.

4. The Government has argued that the motion to dismiss should be deemed withdrawn because it was not accompanied by a supporting brief. Because Local Rule 7.5 affords a party the right to submit a supporting brief within ten (10) days of the filing of a pretrial motion, and the computation of the ten (10) day period does not include weekends and holidays, the Government's contention is without merit.

5. Section 1346 of Title 18 U.S.C., added in 1988, defines the term "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services."

plot,'" is sufficient. *Schmuck*, 489 U.S. at 711, 109 S.Ct. at 1448. "'Completely innocent mailings can satisfy the mailing element'" so long as they bear the requisite relationship to the scheme to defraud. *Tabas*, 47 F.3d at 1294 n. 18. "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time...." *Schmuck*, 489 U.S. at 715, 109 S.Ct. at 1450; *Frey*, 42 F.3d at 799. "'[T]he close relation of the mailings to the scheme does not turn on time or space, but on the dependence in some way of the completion of the scheme or the prevention of its detection on the mailings in question.'" *Tarnopol*, 561 F.2d at 472.

Thus, for example, "the [mail fraud] statute does not cover a mere conversion or misapplication of corporate funds by a corporate officer or employee merely because the mails are used in the corporation's business or because the funds diverted have been received by the corporation through the mails." *United States v. Brickey*, 296 F.Supp. 742, 747 (E.D.Ark.1969). In such situations, completing the scheme is not dependent on the fact that the diverted funds were sent in the ordinary course of business through the Postal Service.

Fauver, relying extensively on *United States v. Beall*, 126 F.Supp. 363 (N.D.Cal. 1954), contends that his alleged theft of Bradford County Prison funds cannot be transformed into a federal offense simply because the checks in question were transmitted through the mails. *Beall* indeed bears a striking resemblance to this case. In *Beall*, the defendant, a treasurer of the Monterey County Chapter of the National Foundation for Infantile Paralysis, was charged with having devised a scheme to defraud that organization by misappropriating cash contribution for his personal use. The indictment charged that "for the purpose of executing that scheme and artifice defendant 'caused to be taken and received from the mails' a letter addressed to himself." 126 F.Supp. at 365. The court identified the dispositive question as follows:

> [I]n the common case of an individual who embezzles funds that are in his possession and control, does the mail fraud statute apply merely because some or all of the funds so embezzled were received in the usual course of that person's duties through the mail? *Id.*

In answering this question in the negative, the court explained:

> The use of the mails here was for a lawful purpose; that is, the fundraising campaign of the Infantile Paralysis Foundation. The facts alleged in the indictment are a far cry from the typical mail fraud case in which false representations are sent by mail or the proceeds of a fraudulent scheme are received through the mails. The funds sent to the defendant during the fundraising campaign could hardly be considered the proceeds of a fraudulent scheme until they were converted by the defendant to his own use ... It is the opinion of this Court that the mail fraud statute was not meant to apply to persons who violate a position of trust and confidence by embezzling funds that come into their hands directed to organizations lawfully entitled to receive those funds through the mails, whether they be bank clerks, or receivers of charitable contributions, or others similarly situated. *Id.* at 366.

Fauver argues that the allegations of the indictment in this case are not materially distinguishable from those found to be insufficient in *Beall*. Moreover, the persuasiveness of *Beall* is enhanced by the fact that it has been cited approvingly by our Court of Appeals. *See United States v. Brown*, 583 F.2d 659, 667 (3rd Cir.1978), *cert. denied, Greenblatt v. United States*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979); *Tarnopol*, 561 F.2d at 472.

*Beall* was cited in *Tarnopol* in support of the proposition that mailings occurring before commencement of the scheme to defraud cannot be regarded as "in furtherance" of the scheme. In *Tarnopol*, the government accused the defendants of a fraudulent scheme that included diversion of cash receipts. In *Tarnopol* the mailings relied upon were of the packing slips for goods for which cash payments were made. Our Court of Appeals held that the mailing of the packing slips could not support a mail fraud prosecution

because "the fraudulent scheme had not commenced with respect to each packing slip until the slip had already been received, and therefore ... the mailing was too remote from the fraud." *Brown*, 583 F.2d at 667.

If the Indictment in this case merely alleged that Fauver took checks that had been delivered through the mails to the Bradford County Prison, the rationale of *Tarnopol* and *Beall* would warrant dismissal of this proceeding. *See also Parr v. United States*, *supra* (School Board members' conversion of tax payments sent through the United States mails did not constitute mail fraud). Dissenting in *Parr*, Justice Frankfurter eloquently explained:

> The fraudulent, episodic, petty-cash peculations of a clerk at a regulatory agency are frauds upon that agency, and although taxpayers generally are injured by the fraud and in that sense are the ultimate objects of it, the mailings by which the tax proceeds are collected which constitute the vast government funds out of which the agent's funds are taken, are, as a matter of practical good sense by which law determines such issues of causation, too remote from the scheme to be deemed in execution of it. *Id.* 363 U.S. at 398, 80 S.Ct. at 1187.

■ The Indictment in this case goes beyond alleging a mere conversion of Bradford County Prison checks. The Indictment alleges, and the government argues, that the checks were mailed to the Bradford County Prison in the name of the Defendant so that he would be able to obtain possession of the checks "without a record of those checks having come into the system being made." (Brief in Opposition to Motion to Dismiss, Docket Entry 13 at 4.) This allegation distinguishes this case from *Parr*, *Tarnopol* and *Beall*. It is reasonably inferable from the Indictment that the Government intends to prove that Fauver caused the checks to be addressed to him as an essential part of the scheme to defraud. Although, as in *Parr*,

*Tarnopol* and *Beall*, the items in question in this case would have been sent through the mails regardless of the scheme to defraud, it does not follow that they would have been sent directly to Fauver. It was the direct transmission of the checks in question to Fauver that, according to the Government, facilitated the alleged scheme. If the Government presents evidence that Fauver played some part in having the checks delivered in envelopes addressed to his attention, a jury could reasonably find that Fauver knowingly caused the use of the mails in furtherance of the alleged scheme. Because *Parr*, *Tarnopol* and *Beall* did not involve an allegation that an individual defendant played a part in the manner in which items were delivered through the mail in order to facilitate the alleged scheme to defraud, they are not controlling here.

In *Brickey*, 296 F.Supp. at 748, the court, quoting Justice Frankfurter's dissent in *Parr*, observed:

> '[T]he adequate degree of relationship between a mailing which occurs during the life of a scheme and the scheme is of course not a matter susceptible of geometric determination.' In a given case the sufficiency of the connection should be determined 'as a matter of practical good sense by which law determines such issues of causation' and finds some mail uses to be 'too remote from the scheme to be deemed in execution of it.'

If Fauver influenced the manner in which BTSI addressed the envelopes containing its payments, "practical good sense" suggests the requisite relationship between the use of the mails and the alleged scheme to defraud.[6] The fact that the mailings were made for the purpose of complying with contractual obligations does not insulate this matter from mail fraud prosecution. As explained by our Court of Appeals in *Brown*, 583 F.2d at 668:

> On the one hand, evidence may show that a mailing was for the purpose of fulfilling a

---

6. Fauver argues that "it is immaterial whether or not the checks were received by mail, or hand delivered to the Bradford County Prison." (Reply Brief in Support of Motion to Dismiss, Docket Entry 15 at 6.) Such an argument could be made in almost any mail fraud prosecution. The critical issue is whether the mails were caused to be used to further the fraudulent scheme. If it was part of the scheme to have the checks delivered in envelopes addressed to Fauver himself, then the use of the mails may be incident to an essential part of the fraudulent scheme, regardless of whether Fauver intended the mails to be used.

business or legal procedure unrelated to the fraud and that it was not closely connected with the fraud. In such a case, the mailing is too remote to convert a state law fraud into federal mail fraud, even though the mailing has the incidental effect of assisting the scheme. On the other hand, if the mailing is a part of executing the fraud, or is closely related to the scheme, a mail fraud charge will lie *even though the mailing was also related to a business purpose.* [Emphasis added.]

In this case, the Indictment alleges use of the mails sufficiently related to the scheme to withstand Fauver's motion to dismiss. In this regard, our Court of Appeals has held that "[t]he relation of the mailing to the fraud is a question of fact." *Id.* *See also United States v. Turoff,* 701 F.Supp. 981, 991 (E.D.N.Y.1988) ("it will be for the jury to determine whether ... mailings were for the purpose of executing the scheme to defraud or were entirely incidental to it"); *United States v. Camiel,* 503 F.Supp. 769, 774 (E.D.Pa.1980) ("[T]he relation of the mailing to the fraud is a question of fact; hence it is a matter to be determined by the jury."); *United States v. Campbell,* 350 F.Supp. 213, 217 (W.D.Pa.1972) ("This is a fact which can only be established by the presentation of evidence at trial.").

### CONCLUSION

This case approaches the outer reaches of the mail fraud statute. But for the government's argument that Fauver caused BTSI to deliver checks in envelopes addressed to him for the purpose of facilitating the alleged scheme, the motion to dismiss would be granted. Whether this case is actually submitted to the jury will depend upon production of evidence supporting the government's argument.

### ORDER

NOW, THIS 9th DAY OF MAY, 1995, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT the Motion to Dismiss the Indictment (Docket Entry 8) is DENIED.

### ORDER

#### May 25, 1995

### BACKGROUND

On May 25, 1995, a telephone conference was conducted with counsel in the above-captioned matter. During the course of the telephone conference, counsel for the Government clarified the Government's position with respect to its prosecution of the Defendant for mail fraud. Specifically, counsel for the Government indicated that the Government did not intend to present evidence that Defendant played some role in causing Business Telecommunication Systems, Inc. of New York ("BTSI") to mail commission payments in envelopes addressed to Defendant's attention.

The Government had clarified its position in response to my ruling in denying Defendant's Motion to Dismiss the Indictment. During the course of my ruling, I indicated that "[i]f the Indictment in this case merely alleged that Fauver took checks that had been delivered through the mails to the Bradford County Prison," the Indictment would be dismissed under the rationale of *United States v. Tarnopol,* 561 F.2d 466 (3rd Cir.1977), and *United States v. Beall,* 126 F.Supp. 363 (N.D.Cal.1954). *See also Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960) (School Board members' conversion of tax payments sent through the United States mails did not constitute mail fraud).

The Government's position, as clarified during our telephone conference, is that a mail fraud prosecution may be maintained because the checks that Fauver allegedly converted were delivered by the Postal Service. In light of the Government's clarification of its position with respect to this matter, the rationale of the May 9, 1995 Memorandum compels dismissal of the Indictment. As explained in *Beall,* 126 F.Supp. at 366:

> [T]he mail fraud statute was not meant to apply to persons who violate a position of trust and confidence by embezzling funds that come into their hands directed to organizations lawfully entitled to receive those funds through the mails, whether they be bank clerks, or receivers of chari-

table contributions, or others similarly situated [including local government officials].[1]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Order of May 9, 1995 denying Defendant's Motion to Dismiss the Indictment is **VACATED.**

2. For the reasons set forth in the Memorandum accompanying the May 9, 1995 Order, and in light of the clarification of the Government's position in this matter, the Motion to Dismiss the Indictment (Docket Entry 8) is **GRANTED.**

---

**1.** Dismissal of the Indictment, of course, does not minimize the seriousness of the alleged offense. But under the facts as clarified by the Government, prosecution of Fauver is *not* a matter that may be pursued under the federal mail fraud statute.