NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────────────

No. 17-2602

─────────────

UNITED STATES OF AMERICA

v.

KENNETH ALLEYNE,

Appellant

─────────────

Appeal from the District Court of the Virgin Islands
(Division of St. Croix)
(D.C. Criminal Action No. 1-15-cr-00012-001)
District Judge: Honorable Wilma A. Lewis

─────────────

Argued on May 24, 2018

Before: KRAUSE, ROTH and FISHER, Circuit Judges

(Opinion filed: May 8, 2019)

Gordon C. Rhea, Esq.   **(Argued)**
Hamm Rhea Eckard
5030 Anchor Way
Suite 13
Christiansted, VI 00820

        Counsel for Appellant

Anna A. Vlasova, Esq.   **(Argued)**
Office of the United States Attorney
5500 Veterans Drive, Suite 260
United States Courthouse
St. Thomas, VI 00802

       Counsel for Appellee

---

OPINION[*]

---

ROTH, <u>Circuit Judge</u>

Kenneth Alleyne appeals the District Court's denial of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29.  He argues that he is entitled to a judgment of acquittal because the government failed to prove the specific intent element for any of the charged offenses.  For the reasons stated below, we will affirm the judgment of the District Court.

**I.**

Alleyne was indicted on 44 counts of wire fraud,[1] one count of conversion of government money,[2] and one count of making a false statement.[3]  He was accused of fraudulently obtaining Overseas Housing Allowance (OHA) benefits while he was a Lieutenant Colonel in the Virgin Islands National Guard (VING).  The OHA program

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] 18 U.S.C. § 1343.
[2] 18 U.S.C. § 641.
[3] 18 U.S.C. § 1001.

2

fully reimburses rental housing costs, subject to approval by the VING, for guardsmen stationed in U.S. overseas territories. Because OHA benefits function as a reimbursement, they must be used for the intended purpose of paying housing costs and cannot be diverted for other purposes.

As relevant to this case, Alleyne entered into three separate year-long leases spanning from November 1, 2009, to October 31, 2012. He submitted signed applications titled "Individual Overseas Housing Allowance (OHA) Report" for each of the leasing years. By signing the application form, Alleyne certified that the information in the form and the attached copy of the lease were true and correct, that he would immediately inform his commanding officer of any changes to the reported information, and that he had read the OHA briefing sheet. The leases that Alleyne attached to his applications required payment of $2,150, due on the first of each month. The landlord of the property is listed in the leases as Earla A. John. Although not so identified in the leases, Earla A. John is also known as Earla A. J. Alleyne and is Alleyne's mother.[4] Alleyne's applications were approved by the VING and he collected OHA benefits in the amount of $2,150 per month.

On November 1, 2011, Colonel Michael McDonald of the VING issued a memo (the November 2011 Memo) requiring guardsmen to produce canceled rent checks as

---

[4] Evidence elicited at trial by defense counsel showed that, in 2002, Earla John had in fact deeded the rental property to her three children, including Alleyne. John apparently did not inform Alleyne of her actions, and a VING JAG officer testified at trial that this practice is common in the Virgin Islands as a type of informal estate planning. Alleyne's ownership interest in the property is ultimately irrelevant to the present appeal. *See infra* note 22.

proof of payment in order to continue receiving OHA benefits. At around the same time, Alleyne added his mother/landlord as joint holder of an account at Banco Popular that Alleyne had previously held exclusively in his own name. Using another bank account, Alleyne subsequently wrote checks to his mother for $2,150 for rent covering the months of November 2011, December 2011, and January 2012. These checks were deposited in the shared Banco Popular account, and Alleyne received OHA reimbursement after submitting the canceled checks.

At trial, the government introduced evidence that Alleyne had fraudulently obtained OHA reimbursement payments. Special Agent Gina Galle testified at trial that, having reviewed Alleyne's financial records, she found no evidence that Alleyne ever paid rent to his mother prior to November 2011, in violation of the lease and OHA requirements.[5] Furthermore, Alleyne's mother, who testified as a defense witness, acknowledged under oath that she never actually accessed the Banco Popular account. In addition, while residing on the rented property, and prior to submitting the OHA applications at issue, Alleyne submitted a loan application to USAA Bank in which he stated that he lived on a family estate and paid nothing in rent. This statement directly contradicted the facts certified by Alleyne in his OHA application—namely, that he was required to pay Earla John $2,150 in monthly rent. Alleyne would have been barred from receiving OHA reimbursement benefits had he reported that he did not pay rent for his housing.

---

[5] Only after the issuance of the November 2011 Memo did Alleyne make the first purported rent payments to his mother for the full amount of $2,150. The only other transfer Alleyne made to his mother was a $65 check made out in August 2011.

After the conclusion of the trial, Alleyne moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The District Court denied Alleyne's Rule 29 motion, and the jury subsequently found Alleyne guilty on all pending counts.[6] At a post-trial status conference, the District Court stated that it had denied the motion because the government had presented sufficient evidence to prove each element of the charged offenses to a rational juror. Alleyne now appeals.

## II.[7]

We exercise plenary review over a District Court's denial of a motion for judgment of acquittal, applying the same standard as the District Court.[8] "We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt."[9] The bar to success on a Rule 29 motion is "extremely high."[10] "[T]he jury's verdict must be assessed from the perspective of a reasonable juror, and the verdict must be upheld as long as it does not fall below the threshold of bare rationality."[11] "That deference is warranted because we trust jurors to judge the evidence, and we instruct them as to all aspects of their decision making."[12]

---

[6] The government agreed to drop 2 of the 44 counts of wire fraud. Thus, Alleyne was convicted of 42 counts of wire fraud.

[7] The District Court exercised jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3241. We exercise jurisdiction under 28 U.S.C. § 1291.

[8] *United States v. Salahuddin*, 765 F.3d 329, 348 (3d Cir. 2014).

[9] *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (citations omitted) (alteration in original).

[10] *Salahuddin*, 765 F.3d at 348.

[11] *Caraballo-Rodriguez*, 726 F.3d at 430-31 (citation omitted).

[12] *Id*. at 431.

Thus, in order to prevail on a Rule 29 motion, a defendant must show that the evidence introduced at trial was insufficient to prove at least one essential element of the charged offense.  Alleyne argues that the government failed to prove the specific intent element required to convict him of each charged offense.[13]  In support of his argument, Alleyne relies upon three cases—*United States v. Wexler*,[14] *United States v. Thomas*,[15] and *United States v. Idowu*[16]—in which this Court overturned a defendant's drug conspiracy conviction because the government presented insufficient evidence to prove the defendant knew of the particular objective of the conspiracy.  Alleyne asserts in his brief that those cases represent this Court's "very high evidentiary burden required for specific intent," but he fails to acknowledge that they have been overturned.  In *Caraballo-Rodriguez*, the en banc Court discarded the standard used in *Wexler*, *Thomas*, and *Idowu* because it was "more akin to ad hoc second-guessing the juries' verdicts than exercising a review function based on sufficiency of the evidence."[17]  Instead, the Court

---

[13] Wire fraud requires a defendant to have "acted with the intent to defraud." *United States v. Riley*, 621 F.3d 312, 325 (3d Cir. 2010).  Although *Riley* addressed mail fraud under § 1341 rather than wire fraud under § 1343, we have long held that the elements of wire fraud and mail fraud are identical, apart from the means through which the communication is transmitted.  *See United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994).

Conversion of government money and making a false statement include similar specific intent elements.  *See* 18 U.S.C. § 641 (defining conversion of government money to require that the defendant have "intent to convert [government money] to his use or gain, knowing it to have been . . . converted"); 18 U.S.C. § 1001 (defining a false statement as requiring a defendant to "knowingly and willfully" falsify a material fact, make a false representation, or make or use any document containing false information).

[14] 838 F.2d 88 (3d Cir. 1988).

[15] 114 F.3d 403 (3d Cir. 1997).

[16] 157 F.3d 265 (3d Cir. 1998).

[17] *Caraballo-Rodriguez*, 726 F.3d at 430.

held that specific intent "need not be proven by direct evidence," as "jurors are routinely instructed that their verdict can be supported by direct *or circumstantial* evidence, and reasonable inferences can be drawn from both types of evidence."[18]  As a result, the government needed to show only that Alleyne acted with the intent or purpose to deceive.[19]  The jury was free to infer intent from circumstantial evidence.[20]

Here, the government provided ample evidence from which the jury could have inferred specific intent to defraud.  The evidence included (1) the three separate OHA applications filed by Alleyne certifying that he had read the OHA briefing sheet; (2) Special Agent Galle's testimony that Alleyne's financial records indicated that he had never paid rent to his mother/landlord; (3) the loan application that Alleyne submitted to USAA Bank, in which he stated that he resided on a family estate and paid nothing in rent; and (4) Alleyne's actions involving the  "joint" Banco Popular checking account and his mother's concession that she never accessed the account.

This "quantum of evidence" provides sufficient grounds upon which a rational jury could have found Alleyne guilty on all counts.[21]  Consequently, Alleyne's argument that the District Court erred in denying his Rule 29 motion is without merit.[22]

---

[18] *Id*. at 431 (emphasis added).

[19] *See* Third Circuit Model Criminal Jury Instructions, Mail or Wire Fraud – "Intent to Defraud" Defined § 6.18.1341-4 ("To act with an 'intent to defraud' means to act knowingly and with the intention or the purpose to deceive or to cheat.").

[20] *Riley*, 621 F.3d 312, 333 (3d Cir. 2010); *see also United States v. Bryant*, 655 F.3d 232, 243 (3d Cir. 2011) ("The Government may prove *mens rea* with circumstantial evidence . . ..").

[21] *Cf*. *Caraballo-Rodriguez*, 726 F.3d at 434.

**III.**

For the aforementioned reasons, we will affirm the judgment of the District Court.

---

[22] We need not address in any detail Alleyne's argument that the government did not show that he knew of his ownership interest in the property. The government's case depended upon showing that Alleyne knowingly and intentionally entered into a lease, failed to pay rent, but nevertheless received regular OHA reimbursement payments for the amount of rent that he falsely told the government he had paid. Such a scheme would have been illegal regardless of Alleyne's ownership interest in the property or his knowledge of such an interest.