

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-1995

# Kirk v Raymark Industries

Precedential or Non-Precedential:

Docket 94-1745

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Kirk v Raymark Industries" (1995). *1995 Decisions.* Paper 200.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/200

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Nos. 94-1745 and 94-1746


SARAH A. KIRK, Administratrix of
the Estates of KIRK, Alfred T., Deceased
and KIRK, Sarah A. in her own right

v.

RAYMARK INDUSTRIES, INC.; EAGLE-PICHER INDUSTRIES, INC.;
KEENE CORPORATION; GARLOCK INC; OWENS-CORNING FIBERGLAS
CORPORATION; CELOTEX CORP.; GAF CORPORATION;
OWENS-ILLINOIS GLASS COMPANY

Owens-Corning Fiberglas
Corporation,
Appellant


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 88-cv-03736)


Argued February 14, 1995
Opinion Filed April 14, 1995
Panel Rehearing Granted May 22, 1995
Resubmitted on Supplemental Briefing June 12, 1995
BEFORE:  STAPLETON, GREENBERG and COWEN,
Circuit Judges

(Filed:  July 27, 1995)


Joseph M. Greitzer
Jerry Kristal      (Argued)
Greitzer & Locks
1500 Walnut Street
20th Floor
Philadelphia, PA  19102

        Counsel for Appellee
        Sarah A. Kirk, Administratrix of the
        Estates of KIRK, Alfred T., Deceased

and KIRK, Sarah A. in her own right

Robert N. Spinelli
W. Matthew Reber     (Argued)
Kelley, Jasons, McGuire & Spinelli
1234 Market Street
Suite 1300
Philadelphia, PA  19107

          Counsel for Appellant
          Owens-Corning Fiberglas Corporation

OPINION

COWEN, Circuit Judge.

This asbestos-related personal injury action was tried to a jury in the United States District Court for the Eastern District of Pennsylvania.  The jury returned a verdict in favor of the plaintiff in excess of two million dollars.  On application by counsel, the district court granted plaintiff delay damages in the amount of $520,684.  In these consolidated appeals, we are called on to determine whether: (1) the district court abused its discretion by denying the defendant's challenge for cause of two jurors who allegedly evidenced bias against the defense; (2) the defendant has waived any claim that there was a violation of its statutory right to exercise peremptory challenges; (3) a denial or impairment of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been removed for cause; and (4) a per se reversal is the appropriate remedy for

2

such impairment or whether the defendant must also make a showing of prejudice. Additionally, we are called upon to determine whether the district court committed an error of law by: (1) allowing plaintiff to introduce into evidence the prior testimony of an out of court expert witness from an unrelated state court action; (2) permitting plaintiff to introduce the interrogatory responses of a co-defendant who settled with the plaintiff prior to trial; (3) awarding plaintiff delay damages pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure.

Because we conclude the district court abused its discretion in denying the defendant's challenge for cause of two jurors during voir dire, and because we conclude that this effected a denial or impairment of the defendant's statutory right to peremptory challenges requiring per se reversal, we will reverse the judgment of the district court and remand for a new trial on the issue of damages and liability.[0] Since it is likely that the hearsay issues and the issue of delay damages may arise again during the new trial, we deem it appropriate to offer the district court guidance. On these subjects, we conclude that the district court erred as a matter of law in allowing the introduction of hearsay evidence, but did not err in ruling that

---

[0]Defendant also argues that the district court abused its discretion in denying: (1) defendant a fair opportunity to prove the liability of a settled co-defendant by denying defendant's request for a continuance to subpoena product identification witnesses; and (2) defendant's request for a new trial on the grounds of excessiveness of the verdict. Because of our decision to reverse the judgment of the district court and remand for a new trial on the issue of damages and liability, we need not address these arguments.

delay damages would be permitted when delay was caused by a judicial stay for which the plaintiff was not responsible.

## I. Factual and Procedural History

Alfred Kirk ("decedent"), a retired painter, died on July 5, 1988 at the age of 65 from malignant asbestos-induced mesothelioma. Mrs. Sarah Kirk ("Kirk"), suing on behalf of herself and her deceased husband's estate, filed this diversity action against eight defendants, including Owens-Corning Fiberglas Corporation ("Owens-Corning").[0] Kirk alleged that her husband's mesothelioma was caused by exposure to dust from asbestos products during his employment at the New York Shipyard in Camden, New Jersey, during the late 1950's and early 1960's.

By order dated July 29, 1991, the Judicial Panel on Multidistrict Litigation ("MDL") transferred all pending federal asbestos personal injury actions to the Eastern District of Pennsylvania. Pursuant to the MDL Panel's Order, all federal asbestos cases were stayed until the summer of 1993.

During jury selection, Owens-Corning challenged for cause two prospective jurors maintaining that the prospective jurors could not be impartial because they revealed considerable potential bias against Owens-Corning during voir dire. The

---

[0] Of these eight defendants, four were bankrupt at the time of trial. Of the four remaining defendants, Kirk settled with Garlock, Inc., GAF Corporation, and Owens-Illinois prior to trial. Kirk also previously filed an asbestos-related lawsuit in the Philadelphia Court of Common Pleas against Pittsburgh Corning Corporation, H.K. Porter Company, Inc., and Southern Textile Corporation. Of these defendants, two were bankrupt and Kirk settled with Pittsburgh Corning prior to trial.

district court refused to strike these prospective jurors for cause, and Owens-Corning was then compelled to utilize two of its three peremptory strikes to remove these prospective jurors.[0]

On December 13, 1993, the trial (which was reverse-bifurcated) began with issues of medical causation and damages. At the conclusion of this phase of the trial, the jury returned a verdict in favor of the Estate of Alfred Kirk for $1.2 million and in favor of Sarah Kirk for $810,000. The liability phase of the trial commenced several days later before the same jury that had previously heard the damages phase. At the conclusion of the liability trial, the jury returned a verdict against Owens-Corning. The jury also found that the decedent was not exposed to dust emitted by any asbestos-containing product manufactured by co-defendant Garlock, Inc. ("Garlock").

Following the jury verdict, Owens-Corning moved for a new trial, alleging several trial errors including: (1) failing to strike two prospective jurors for cause; and (2) allowing the introduction of hearsay evidence. This application was denied by

---

[0] We granted panel rehearing for the purpose of determining whether reversal is required when a party is compelled to expend or "waste" any number of its peremptory strikes to remove a prospective juror who should have been removed for cause. In the original panel opinion, we concluded that Owens-Corning was prejudiced by the presence of these two jurors sitting on the jury. We were shocked to learn, in a petition for rehearing in banc, that these two jurors never actually served because Owens-Corning exercised peremptory strikes to remove these jurors. In the original briefing, as well as during argument before this panel, both parties failed to inform the Court that these two jurors were never seated on the jury. We are deeply disturbed by the fact that the briefing in this matter did not make clear to us this crucial fact and caused the Court to waste valuable time and judicial resources.

5

the district court. Kirk filed an application for delay damages pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure, which the district court granted in the amount of $520,684. Owens-Corning appeals from both the judgment and the award of delay damages.

Owens-Corning argues that the district court made several errors which require reversal of both the damage and liability phases of the trial, and that the district court improperly denied its post-verdict motion for a new trial. Finally, Owens-Corning claims that delay damages should not have been awarded to Kirk, because the delay was caused by the plaintiff filing simultaneous federal and state court actions and/or caused by the MDL order staying all asbestos cases, and was not caused by any bad faith on the part of Owens-Corning. We will address each of these arguments seriatim.

The district court had jurisdiction to hear this case pursuant to 28 U.S.C. § 1332. Our jurisdiction is premised on 28 U.S.C. § 1291 as the judgment entered was a final order.

## II. Juror Challenges
### A. Challenges for Cause

Owens-Corning argues that the district court erred in refusing to strike for cause two prospective jurors (juror #251 and juror #45) who the defendant argues revealed considerable potential bias against it during voir dire. As a consequence, Owens-Corning claims that it was forced to expend or "waste" two of its peremptory strikes to remove these two jurors from the

jury.  We review for abuse of discretion a district court's decision regarding a motion to dismiss a juror for cause.  United States v. Polan, 970 F.2d 1280, 1284 (3d Cir. 1992), cert. denied, __ U.S. __, 113 S. Ct. 1367 (1993) (citing United States v. Salamone, 800 F.2d 1216, 1226 (3d Cir. 1986) (the factual determination by the district court whether a juror can serve impartially is entitled to special deference when reviewed on appeal), cert. denied, 498 U.S. 1030, 111 S. Ct. 685 (1991)).

Because the trial judge is in the best position to assess the credibility and demeanor of the prospective jurors, "district courts have been awarded ample discretion in determining how best to conduct the voir dire."  Waldorf v. Shuta, 3 F.3d 705, 710 (3d Cir. 1993) (citing Rosales-Lopez v. United States, 451 U.S. 182, 189, 101 S. Ct. 1629, 1635 (1991)).  In determining whether a particular juror should be excused for cause, our main concern is "whether the juror holds a particular belief or opinion that will `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  Salamone, 800 F.2d at 1226 (citing Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 852 (1985)).  "A juror is impartial if he or she can lay aside any previously formed `impression or opinion as to the merits of the case' and can `render a verdict based on the evidence presented in court.'"  Polan, 970 F.2d at 1284 (citing Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 1643 (1961)).  However, the district court should not rely simply on the jurors' subjective assessments of their own impartiality.  See Waldorf, 3 F.3d at

7

710 (district court relied too heavily on jurors' assurances of impartiality); see also Government of the Virgin Islands v. Dowling, 814 F.2d 134, 139 (3d Cir. 1987) (though a juror swears that he could set aside any opinion he might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if other facts of record indicate to the contrary), aff'd, 493 U.S. 342, 110 S. Ct. 668 (1990).

Owens-Corning argues that prospective juror #251 should have been struck for cause because he worked with asbestos-containing products for many years and indicated during voir dire that he was leaning in favor of the plaintiff. Kirk argues that this prospective juror was properly placed on the jury because when questioned by both the district court and counsel whether he could render a fair and impartial verdict, the prospective juror responded in the affirmative.

We are troubled by the fact that a district judge, despite assurances of impartiality, allowed a prospective juror to serve in a mesothelioma case when the juror's background raised serious questions as to his ability to serve impartially.[0]

---

[0] Relevant portions of the voir dire of prospective juror # 251 are as follows:

Juror 251:  Well, two uncles had cancer, they were mechanics. Our union did a study on their members. I am a mechanic, and it was like 97 percent of them tested had some problem with asbestos. I have eaten a lot of it over the years brakes, clutches up until gets in the air hose, blows it out, you spit black dirt for two days.
        . . . .

Mr. Kristal (counsel for Kirk):  Do you think that will affect your ability to listen to the

8

                          evidence and be fair to both
                          sides in this case?

Juror 251:     Well I could only try to be fair is all I could
               say.  I guess in a way I got to be a little one
               way, I'm probably high on the priority list
               myself.  I've been a mechanic since 1957, up until
               when they stopped using it, you know, you took a
               clutch out of a truck, hit it with the air hose
               and the whole shop is black.

               . . . .

Mr. Kristal:   If I didn't prove my case, or show that Mr. Kirk
               didn't have asbestos disease or I was unable to
                    show Owens-Corning Fiberglas was liable,
               would you be able to return a verdict against my
               client?

Juror 251:     I wouldn't have any problems at all.

Mr. Kristal:   [I]f I had proven the case, would you be able to
               find in favor of my client?

Juror 251:     I might lean the other way because I have been
               there.  I know a lot of members who have been down
               that road, you know.

Mr. Kristal:   Can you put [your past experience with asbestos]
               behind you and decide this case on what you hear
               in the courtroom from the witness stand and follow
               the Court's instructions?

Juror 251:     I believe I could.

Mr. Hewitt (counsel for Owens-Corning): Your two uncles had

                                        cancer?

Juror 251:     Yes.

Mr. Hewitt:    Do you believe those cancers were related to
               asbestos?

Juror 251:     I don't know.  They both had lung cancer.

Mr. Hewitt:    Were they around asbestos?

Juror 251:     Mechanics the same as I am, both smoke, so it's
               anybody's guess.

9

App. 68-70.

The Court:    He thinks he has asbestos coursing through his
              system.

                    . . . .

The Court:    I just want to clarify in my own mind, you have
              been exposed to the brake linings and flakes from
              brake linings?

Juror 251:    Yes.

The Court:    For many years now?

Juror 251:    Yes, sir.

The Court:    And you think that probably asbestos fibers made
              their way in through your own system because when
              you had the air hose --

Juror 251:    You see our Local, I am a member of the Local, and
              when all this asbestos problem came out, the Union
              started testing some of the older members.  It was
              like they finally knocked it off like 97 percent
              of the people tested, tested positive for
              asbestos.  And back then, we didn't know nothing
              about it.  You took brakes off the truck, took the
              air hose blew it off, disk, clutch, all asbestos,
              and I said yesterday, I probably had eaten a
              couple of pounds of it, and I have never been
              tested for it, but I have been subject to it.

The Court:    If you are on this case you would be deciding
              certain questions, concerning somebody who died of
              asbestos exposure, how much money to award.  Do
              you think because of your own personal experience
              perhaps to a certain extent because of your
              uncles, you are not sure of the cause of the
              death, whether cigarettes or something to do with
              asbestos, do you think you could be fair or would
              you be inclined --

Juror 251:    Like I said, most of what I seen has been against
              it.  I would have to sit and listen to the case.
              If the one attorney can prove that it wasn't, I
              could handle that.  But at this point right now I
              only know the one side of it.

The Court:    The way it's going to be, the plaintiff has the
              burden of proof, not the defendant.  And do you

10

Specifically, we note the following facts which raise substantial questions of the potential bias of juror #251: (1) during the course of his work history he had "probably eaten a couple of pounds of [asbestos]"; (2) he was a union shop steward for 35 years and received one-sided literature from the union regarding asbestos; (3) he believed that 97% of the older workers in his local union had tested positive for asbestos in their system; (4) he had two uncles who died of lung cancer and although they were

|  | think you could decide the case fairly or do you think because of your own personal experiences you would be sort of caught up in it and tend to favor the plaintiff? |
|---|---|
| Juror 251: | I think I could do it fairly. I have been a shop steward for 35 years. Lots of time I have to go against the company. That didn't sit too well but I think I could sit and listen to the facts. |

. . . .

| Juror 251: | I think I could weed through it. Most of the information I have has been from the side of the Union coming with the asbestos. And really, it's a one-sided argument. |
|---|---|

. . . .

| Mr. Hewitt: | I think you indicated earlier that you would lean a little -- |
|---|---|
| Juror 251: | Well, at this point I would have to be [a] liar if I said to you -- the facts that I had lean in favor of the possibility or the possibility of it happening. I haven't really had any, a lot of facts thrown to me, where it is not, and like I said, I would have to hear what they have to say, and determine from that. I just can't crystal-ball, say this gentleman is going to convince me that the client, his client did die from it. I just have to listen to the facts, and just understand all the facts that I had about it have been the negative, from your standpoint, so I would have to weed out one or the other. |

App. at 76-79.

11

cigarette smokers, they had been exposed to asbestos during the course of their work lives; (5) he admitted in the first instance that he was leaning in favor of the plaintiff and against the asbestos company; (6) he believed that he was "probably high on the priority list" of getting an asbestos-related disease himself; and (7) he knew "a lot of [union] members" who presumably had asbestos-related medical problems.

Owens-Corning next argues that prospective juror #45 should have been struck for cause because he had responded to the jury questionnaire that he could not be fair and later repeated at voir dire that he would have a difficult time being fair to the defendant. Kirk counters by pointing out that when further questioned by the district court as to whether he could render a fair and impartial verdict, the prospective juror responded in the affirmative.[0] Again, we are troubled because the second

_____

[0]Relevant portions of the voir dire are as follows:

The Court:      In this case, sir, if you are on this jury can you
                well and truly try the case based on the evidence
                as it comes forth from the witness stand and not,
                with all respects [sic] to the media, based on TV,
                or radio or newspapers and all of that? Do you
                think you could do that, sir?

Juror 45:       Yes, I believe so, because it's possible it could
                be slanted one way or the other.
        . . . .

The Court:      So you answered that you could not be fair to
                companies that made, distributed, supplied and/or
                installed asbestos-containing products, what do
                you mean by that?

Juror 45:       Basically I feel it's sort of immoral to knowingly
                produce something you know is going to cause a
                problem.

12

prospective juror: (1) stated in the jury questionnaire that he could not be fair to companies that made, distributed, supplied and/or installed asbestos-containing products; (2) felt it was immoral to produce asbestos if the company knew it was going to cause a problem; and (3) indicated that he could not be fair to

---

| | |
|---|---|
| The Court: | Do you think it's immoral -- I am not saying this is the case -- to produce something when they don't know anything is wrong with it, they don't know but it turns out later there is something wrong with it? |
| Juror 45: | I feel if they do find out it should be corrected. |

. . . .

| | |
|---|---|
| The Court: | [D]o you think you could be fair? |
| Juror 45: | Yes. |
| Mr. Hewitt: | One question, if the evidence is that Owens Corning knew that asbestos was hazardous would you have a tough time giving them a fair shake? |
| Juror 45: | Yes, I would. |
| The Court: | What do you mean by giving them a fair shake? Would you have a tough time coming up with a verdict in their favor if you know the [sic] under the evidence and the law they are liable? |
| Juror 45: | Well -- |
| The Court: | I would tell you if it comes in, if the evidence and the law did not demonstrate that the plaintiff proved their [sic] case, I am not saying that is not being fair to the defendant, you are being fair, just as you would be fair to the plaintiff if after fairly considering the evidence you find there's not a case made out, you would nevertheless find against her, you are abiding by your oath as a juror. |
| Juror 45: | Whatever you say, yes. |

App. at 64-66.

13

the defendant if the evidence indicated that Owens-Corning knew that asbestos was hazardous.  Only after being repeatedly asked if he could be fair, the juror answered, "Whatever you say, yes."

Recently, we had the opportunity to decide a similar case involving a challenge to a district court's refusal to remove several jurors for cause.  Polan, 970 F.2d at 1284.  In that case, which involved a prosecution for conspiracy to distribute and the distribution of illegally prescribed drugs, counsel for the defendant challenged for cause three prospective jurors who revealed during voir dire that either they or members of their families were victims of drug abuse.  Id.  Juror #1 revealed that one of his brothers had died of a drug overdose and another brother had served a lengthy prison term for drug offenses.  Id. n.2.  Juror #2 indicated that she had become dependent upon tranquilizers after experiencing a family tragedy.  Id.  Juror #3 revealed that his son had abused alcohol and drugs in the past.  Id.  However, all three prospective jurors ultimately assured the court that their past experiences would not affect their decision making and that they would be fair and impartial.  After reviewing the record of the voir dire, we concluded that the district court did not abuse its discretion in refusing to strike those prospective jurors.  Polan, 970 F.2d at 1284.

We find that Polan is distinguishable from the case before us.  In Polan, the defendant wanted the prospective jurors removed presumably because he believed that some of their past experiences would make them more likely to vote for conviction.

14

With regard to juror #1, we gave little weight to the theory that an individual whose one brother died of a drug overdose and whose other brother served a prison sentence for drug offenses would be more likely to convict a criminal defendant charged with drug distribution. With regard to juror #2, we were not convinced that a person who became dependent on sedatives after the shock of a family tragedy would be more likely to convict an individual accused of distributing drugs. Finally, with regard to juror #3, we gave little credence to the notion that a father who endured his son's alcohol and drug problems would be biased in favor of the prosecution. Thus, when the district court in <u>Polan</u> credited the assurances of the three prospective jurors, it implicitly made two findings: (1) that the jurors were telling the truth and (2) despite the experiences and personal biases of the jurors, they could be fair and impartial, precisely because their past experiences and personal biases did <u>not</u> make them more likely to convict the defendant.

Here, Owens-Corning objected to jurors #251 and #45 being seated on the jury because it believed that their personal biases regarding asbestos and asbestos companies would make them more likely to return a finding of liability and a large damage award against Owens-Corning. Unlike the defendant in <u>Polan</u>, Owens-Corning's fear, that the prospective witnesses' past experiences and personal biases would affect their decision, was well-founded.

Juror #251 inhaled a considerable amount of asbestos, knew people who were suffering from asbestos-related diseases,

15

and thought himself likely to succumb to some asbestos-related disease in the future. Thus, there was good reason to conclude that he would be more likely to return a large damage award because he sympathized with the plaintiff. See Gumbs v. Pueblo International, Inc., 823 F.2d 768, 773 (3d Cir. 1987) ("[A] jur[or] may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket."). It is difficult to conceive of a juror who would be more partial to this plaintiff than juror #251. Because juror #251's background is replete with circumstances which would call into question his ability to be fair to an asbestos manufacturer, we find that the district judge should have removed this juror for cause.

Juror #45 stated that he was biased against asbestos companies and felt it was immoral knowingly to produce harmful and defective products. The danger existed that this juror would return a verdict of liability against Owens-Corning even if Owens-Corning's products were not responsible for the decedent's injuries. We can think of few admissions more compelling in asbestos litigation than a prospective juror who acknowledges that he would have moral qualms about being fair to an asbestos manufacturer.

We conclude that juror #45 and especially juror #251 could not serve fairly and impartially in light of their past experiences and personal biases. The district court relied too heavily on the jurors' assurances of impartiality, and therefore abused its discretion. A district court's refusal to excuse a

16

juror will not automatically be upheld simply because the district court ultimately elicits from the prospective juror that he will be fair and impartial, despite earlier statements or circumstances to the contrary. The application of Owens-Corning to dismiss these two jurors for cause should have been granted.

## B. Peremptory Challenges

Because the district court refused to strike these jurors for cause, Owens-Corning exercised two of its three peremptory strikes to remove these two prospective jurors from the jury. Federal law provides that "[i]n civil cases, each party shall be entitled to three peremptory challenges." 28 U.S.C. § 1870. We must now decide whether: (1) the defendant has waived any claim that there was a violation of a statutory right to exercise peremptory challenges; (2) a denial or impairment of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to strike jurors who should have been removed for cause; and (3) a per se reversal is the appropriate remedy for such impairment or whether the defendant must also make a showing of prejudice.

## 1. Waiver

Kirk argues that we may not now consider on appeal Owens-Corning's contentions that there was a violation of the statutory right to exercise peremptory strikes because the claim

17

was not properly preserved in the trial court.[0]  We have previously held that "[i]t is well established that failure to raise an issue in the District Court constitutes waiver of the argument."  Brenner v. Local 514, United Brotherhood of Carpenters, 927 F.2d 1283, 1298 (3d Cir. 1991).

Owens-Corning made the following argument before the district court in support of its motion for a new trial:

> [T]he district court is compelled to excuse a potential juror when bias is discovered during voir dire, as the failure to do so may require the litigant to exhaust peremptory challenges on persons who should have been excused for cause.  This result, of course, extinguishes the very purpose behind the right to exercise peremptory challenges. U.S. v. Daly, 716 F.2d 1499, 1507 (9th Cir. 1983) [citing United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977); United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976)].

Brief of Owens-Corning in Support of its Motion for a New Trial at 3.[0]  In Daly, the Court of Appeals for the Ninth Circuit additionally stated that "[s]uch an infringement, if it causes a

---

[0] Alternatively, Kirk maintains that to the extent this issue was not waived, the argument must fail on the merits because Owens-Corning failed to show that the jury was not impartial.  We will address this argument below.  See infra part II.B.3.

[0] In Allsup, the court noted that impairment of the right to exercise peremptory challenges is usually deemed to be prejudicial error, without a showing of actual prejudice.  566 F.2d at 71 (citing Swain v. Alabama, 380 U.S. 202, 219, 85 S. Ct. 824, 835 (1965)).  In Nell, the court stated "it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges."  526 F.2d at 1229 (citing Swain).  Although Kirk later argues that Swain is no longer good law (and reliance on it is improper), at this stage of the inquiry we are not deciding the issues raised on the merits, but are simply ascertaining whether Owens-Corning has preserved this argument for appeal.

prejudicial diminution of peremptory challenges, constitutes reversible error." Daly, 716 F.2d at 1507 (citing Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981), cert. denied, 463 U.S. 1211, 103 S. Ct. 3545 (1983); Allsup, 566 F.2d at 71; United States v. Boyd, 446 F.2d 1267, 1275 n.27 (5th Cir. 1971)). We believe that Owens-Corning's reference to Daly during the course of its argument to the district court properly preserved for appeal the argument that impairment of a peremptory strike requires reversal. Although Owens-Corning never specifically articulated that the impairment of a peremptory strike was a statutory violation, we are of the opinion that raising the question of the appropriate remedy for the impairment of peremptory challenges fairly places before us the question of whether a statutory right to peremptory challenges has been violated.

2. Denial or Impairment of Peremptory Challenges

We must next decide whether a denial or impairment of the exercise of peremptory challenges occurs if a defendant expends or wastes a peremptory challenge to strike a juror who should have been removed for cause. The Supreme Court specifically declined to decide this issue in Ross v. Oklahoma, 487 U.S. 81, 108 S. Ct. 2273 (1988), stating, "we need not decide the broader question whether, in the absence of Oklahoma's limitation on the `right' to exercise peremptory challenges, `a denial or impairment' of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove

19

jurors who should have been excused for cause."[0]  Id. at 91 n.4, 108 S. Ct. at 2280 n.4.  We do not believe this to be a difficult issue.  Here, the district court failed to strike two jurors who were challenged for cause, and we determine that this failure was error.  In order to ensure that these two prospective jurors who exhibited prejudice did not serve on the jury, Owens-Corning utilized two peremptory strikes.  We hold that compelling a party to use any number of its statutorily-mandated peremptory challenges to strike a juror who should have been removed for cause is tantamount to giving the party less than its full allotment of peremptory challenges.  Because 28 U.S.C. § 1870 requires that each party shall be entitled to three peremptory challenges, "a denial or impairment" of that statutory right occurs whenever a party exercises a peremptory challenge to strike a prospective juror who should have been removed for cause.  Here, Owens-Corning's statutory right to three peremptory challenges was impaired.

### 3.  Remedy

Relying on Swain v. Alabama, 380 U.S. 202, 85 S. Ct. 824 (1965), overruled on other grounds by Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), Owens-Corning argues that the impairment or denial of the statutory right to exercise

---

[0]In Ross, the Court observed that under Oklahoma law, a party is required to expend a peremptory strike in order to preserve for appeal a challenge to the trial court's refusal to remove that juror for cause.  487 U.S. at 89, 108 S. Ct. at 2279.  There is no analogous requirement under federal law.

peremptory challenges requires the common law remedy of per se reversal. The common law remedy of per se reversal has a long history and tradition in our judicial system. As early as the 1890's, the Supreme Court held in Gulf, Colorado & Santa Fe Ry. Co. v. Shane, 157 U.S. 348, 15 S. Ct. 641 (1895), that to "impanel a jury in violation of law, and in such a way as to deprive a party of his right to peremptory challenge, constitutes reversible error." Id. at 351, 15 S. Ct. at 642. In Shane, a civil defendant claimed that the trial judge committed error by failing to adhere to an Arkansas statute that provided each party three peremptory strikes to be used on a list of eighteen prospective jurors. Because the trial judge confined the right to exercise peremptory challenges to only twelve prospective jurors, the Supreme Court concluded, without a showing of prejudice, that the trial court violated the statute. Id. Similarly, in Harrison v. United States, 163 U.S. 140, 16 S. Ct. 961 (1896), a criminal defendant argued that the trial judge erred in allotting him only three peremptory strikes, instead of the ten to which he was entitled under a federal statute. Because the defendant wanted to exercise five additional peremptory strikes, but was precluded from so doing, the Supreme Court reversed, observing that "[i]f [the defendant] was entitled to ten peremptory challenges, five persons unlawfully took part as jurors in his conviction." Id. at 141, 16 S. Ct. at 961. Again, the Court did not require a showing of prejudice for this statutory violation. See also Lewis v. United States, 146 U.S. 370, 375-77, 13 S. Ct. 136, 138 (1892) (statutory right provided

by Arkansas law requiring defendant to be present during the exercise of peremptory strikes was violated, thus requiring per se reversal). <u>Swain</u> continued the tradition of these cases.[0]

Kirk maintains that <u>Batson</u> has overruled <u>Swain</u> in its entirety, and that <u>Ross v. Oklahoma</u>, 487 U.S. 81, 108 S. Ct. 2273 (1988), requires a specific showing of prejudice -- that the jury

---

[0] Kirk cites to a case from the same era, <u>Hopt v. People</u>, 120 U.S. 430, 7 S. Ct. 614 (1887), which she claims Owens-Corning concedes stands for the proposition that "an erroneous denial of [a] challenge for cause does <u>not</u> constitute reversible error if the party is not prejudiced." Plaintiff/Appellee's Rehearing Reply Brief at 10 (June 12, 1995) (emphasis in original) (citing Supplemental Brief of Appellant at 4 (June 6, 1995)). We are troubled by Kirk's argument. First, Owens-Corning does not concede that a party must show prejudice (<u>i.e.</u>, a biased jury) in order for reversal to occur. Rather, Owens-Corning states that there can be no per se reversal unless the party proves that a peremptory strike has been impaired. <u>See</u> Supplemental Brief of Appellant at 4 (June 6, 1995) (arguing there can be no per se reversal unless the party is prejudiced by "having to `waste' its peremptories on biased veniremembers.")

Second, <u>Hopt</u> does not stand for such a proposition. In <u>Hopt</u>, the defendant argued that the trial judge made several errors in ruling on the competency of four jurors. The trial judge denied all four challenges for cause. However, the district attorney removed one juror peremptorily and the defendant removed two jurors with peremptory strikes. The remaining juror was permitted to sit on the jury, but the Supreme Court ruled that the trial judge did not err in denying this challenge for cause. With regard to the two jurors who were struck by the defendant, the Supreme Court concluded that assuming <u>arguendo</u> that the trial judge erred in refusing to strike two jurors for cause, there was no injury to the defendant because he utilized less than thirteen of the fifteen peremptory challenges provided by Utah statute. <u>Id.</u> at 436, 7 S. Ct. at 617. As noted in part II.B.2 <u>supra</u>, in order to be entitled to per se reversal, a party must first show its statutory right to peremptory strikes was denied or impaired. Because Hopt still had at least one peremptory strike remaining which he failed to use on the remaining juror, he failed to prove an impairment.

22

who actually sat was not impartial -- before reversal is required.[0]

In Swain, a black defendant raised a challenge to the prosecution's use of peremptory challenges to strike six black prospective jurors from the petit jury venire. The Supreme Court announced a general rule that "[t]he denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice." Swain, 380 U.S. at 219, 85 S. Ct. at 835 (citing Lewis v. United States, 146 U.S. 370, 13 S. Ct. at 136; Harrison v. United States, 163 U.S. 140, 16 S. Ct. 961; Gulf, Colorado & Santa Fe Ry. Co. v. Shane, 157 U.S. 348, 15 S. Ct. 641). In addition, the Swain Court held that striking black members of the petit jury venire does not violate the law, id. at 221, 85 S. Ct. at 836, a determination which has since been conclusively overruled in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986). See Batson, 476 U.S. at 89, 106 S. Ct.

_____

[0]We understand Kirk to be making two separate arguments. First, Kirk asserts that assuming arguendo Owens-Corning has raised a claim of violation of a Seventh Amendment right to an impartial jury, this argument must fail on the merits because defendant did not object to the jury that was ultimately seated. We need not address this point because Owens-Corning does not rely on any claim that the jury that decided this case was not impartial. See Supplemental Brief of Appellant at 10 (June 6, 1995) ("Owens-Corning obviously cannot argue that it has been deprived of any Sixth Amendment right, nor has it asserted any analogous right under the Seventh Amendment.") (footnote omitted); Reply Brief of Defendant/Appellant at 5 n.3 (June 13, 1995) ("Owens-Corning does not claim that the jury that decided this case was not impartial, nor does Owens-Corning rest its entitlement to a new trial on the Seventh Amendment right to an impartial jury.").
Second, as we discuss below, Kirk maintains that Ross' requirement of showing jury impartiality should apply to statutory, as well as constitutional, claims of impairment of peremptory challenges.

at 1719 ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race . . . ."). Batson removed a prosecutor's unbridled discretion to exercise peremptory challenges when the Equal Protection Clause is violated. However, Batson did not reach the situation where the Equal Protection Clause is not implicated. Indeed, Batson did not overrule the portion of Swain which held that denial or impairment of a peremptory strike is per se reversible error. Stated differently, if the prosecutor does not exercise peremptory strikes on the basis of race,[0] an impairment of that statutory right to exercise peremptory challenges requires per se reversal.

Notwithstanding the conclusion that the per se reversal requirement of Swain survives after Batson, Kirk contends that a

---

[0]In recent years the Supreme Court has recognized additional circumstances under the Equal Protection Clause in which a trial judge may interfere with a party's exercise of peremptory strikes without the consequence of per se reversal. See Powers v. Ohio, 499 U.S. 400, 415, 111 S. Ct. 1364, 1373 (1991) (under Equal Protection Clause, prosecutor may not exercise peremptory strikes on the basis of race and criminal defendant may object to race-based exclusion of jurors effected through peremptory challenges whether or not defendant and excluded jurors share the same race); Edmonson v. Leesville Concrete Co., 500 U.S. 614, 616, 111 S. Ct. 2077, 2080 (1991) (race-based exercise of a peremptory challenge by a private litigant in a civil lawsuit violates equal protection rights of the challenged jurors); Georgia v. McCollum, 505 U.S. 42, __, 112 S. Ct. 2348, 2359 (1992) (Equal Protection Clause prohibits a criminal defendant from engaging in racial discrimination in the exercise of peremptory strikes); J.E.B. v. Alabama Ex. Rel. T.B., __ U.S. __, __, 114 S. Ct. 1419, 1422 (1994) (Equal Protection Clause forbids the exercise of peremptory challenges on the basis of gender as well on the basis of race). Nevertheless, because the case before us does not involve any of these situations implicated by the Equal Protection Clause, a per se reversal would still be required under the dictates of Swain.

24

more recent Supreme Court case, Ross v. Oklahoma, 487 U.S. 81, 108 S. Ct. 2273 (1988), abolished the per se reversal remedy in requiring the party seeking reversal to demonstrate that the jury actually seated was not impartial. In Ross, the petitioner argued that the failure of the trial court to strike a juror for cause and his subsequent "wasting" of a peremptory strike resulted in a violation of his Sixth and Fourteenth Amendment right to an impartial jury, and his Fourteenth Amendment right to due process. Ross, 487 U.S. at 85, 108 S. Ct at 2277. As an initial matter, the Supreme Court noted that none of the jurors who actually sat and decided the case were challenged for cause by defense counsel. Id. at 84, 108 S. Ct. at 2276. Additionally, there was nothing in the record to suggest that any juror who actually sat was not impartial. Id. at 86, 108 S. Ct. at 2277. Moreover, the Court observed that any claim that the jury was biased must focus not on the challenged juror who was removed via the exercise of a peremptory strike, but rather on the jurors who ultimately sat. Id. The Supreme Court held:

> [The defendant] was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. We conclude that no violation of [the

defendant's] [constitutional] right to an impartial jury occurred.

*Id.* at 88, 108 S. Ct. at 2278 (emphasis added) (citations and footnote omitted).

In reaching the question of whether the defendant's Fourteenth Amendment right of due process was violated, the Court observed:

> Because peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. As such, the "right" to peremptory challenges is "denied or impaired" only if the defendant does not receive that which state law provides.

*Id.* at 89, 108 S. Ct. at 2279 (citations omitted). Under Oklahoma law, a defendant who disagrees with a trial court's ruling on a challenge for cause is required to exercise a peremptory challenge to remove the juror, or else the defendant waives the right to object on appeal. *Id.* Further, reversal is mandated only if the party exercises all of its peremptory strikes and an incompetent juror sits on the jury. *Id.* Ultimately, the Court concluded, "[a]s required by Oklahoma law, [the defendant] exercised one of his peremptory challenges to rectify the trial court's error . . . . But he received all that Oklahoma law allowed him, and therefore his due process challenge fails." *Id.* at 91, 108 S. Ct. at 2279-80. Thus, *Ross* holds that there is no <u>constitutional</u> violation mandating reversal unless a party can show that the jury was not impartial. *Ross* is not controlling, however, because Owens-Corning alleges a <u>statutory</u>, not a constitutional, injury.

26

Additionally, quite recently, we have spoken on this issue in a similar case. In United States v. Ruuska, 883 F.2d 262 (3d Cir. 1989), the defendant argued on direct appeal that his right to exercise a peremptory challenge was impaired, thus requiring a new trial. In that case, the defendant was granted an additional peremptory strike, but was later precluded from exercising this strike. The government argued that any error was harmless because a substantial right of the defendant was not affected, that is, the jury that ultimately sat was not impartial. We rejected the government's invitation to perform a harmless error analysis. Rather, we acknowledged that the right to peremptory challenges is a statutory, rather than a constitutional privilege, and that peremptory challenges may be "`withheld altogether without impairing the constitutional guaranties of an "impartial jury" and a fair trial.'" Id. at 268 (quoting Frazier v. United States, 335 U.S. 497, 505 n.11, 69 S. Ct. 201, 206 n.11 (1948)) (emphasis added). We interpreted "the long line of Supreme Court authority that culminated with Swain to say that the denial or impairment of the right to peremptory challenges is reversible error per se." Id. (quoting Swain) (citations omitted). Though we did not explicitly mention Ross, we think it clear that we were distinguishing the case at bar from those cases where a constitutional injury has been alleged. Thus, a showing of prejudice is not required to reverse a verdict after demonstrating that a statutorily-mandated, peremptory challenge was impaired. See also 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2483, at 124 (1995)

27

("The denial or impairment of the right [to peremptory challenges] is reversible error without a showing of specific prejudice.") (citing Swain, 380 U.S. at 219, 85 S. Ct at 835; Gulf, Colorado & Santa Fe Ry. Co. v. Shane, 157 U.S. 348, 15 S. Ct. 641 (1895); Carr v. Watts, 597 F.2d 830 (2d Cir. 1979); Kiernan v. Van Schaik, 347 F.2d 775 (3d Cir. 1965)).

We do not stand alone in holding that the denial or impairment of a peremptory strike requires per se reversal. In United States v. Cambara, 902 F.2d 144 (1st Cir. 1990), the defendant argued that he was unfairly forced to expend a peremptory challenge to strike a juror who should have been excused for cause. Id. at 147. In that case, the defendant was entitled by statute to exercise ten[0] peremptory strikes and the district court awarded an additional two challenges for a total of twelve. The defendant had exhausted all twelve of his peremptory challenges, but he was not forced to expend one of the ten to which he was entitled under statute. Instead, he was forced to waste one of the two additional strikes. Although the Court of Appeals for the First Circuit held that impairment of an additional peremptory challenge does not violate any rights of the defendant, the court recognized that "restricting a defendant's use of the lawful number of peremptory strikes is reversible error if a challenge for cause is erroneously denied." Id. at 147-48 (citations omitted). See also Carr v. Watts, 597

---

[0] Pursuant to Rule 24 of the Federal Rules of Criminal Procedure, "[i]f the offense charged is punishable by imprisonment for more than one year . . . the defendant [is entitled] to 10 peremptory challenges." Fed. R. Crim. P. 24(b).

28

F.2d 830, 833 (2d Cir. 1979) (error in denying challenge for cause that compels unnecessary use of peremptories is reversible error);[0] United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977) (erroneous refusal to excuse a juror for cause constitutes reversible error despite defendant's use of peremptory challenge where district court's error reduced number of peremptory challenges); United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976) (same) (citing Swain).[0]

Furthermore, some post-Ross cases from other courts of appeals, while not concluding that a per se reversal is mandated, have recognized that Ross only speaks to constitutional challenges and does not necessarily control non-constitutional or statutory errors. In United States v. Beasley, 48 F.3d 262 (7th Cir. 1995), the district court refused to remove three challenged jurors for cause, whereupon the defendant exercised two of his ten remaining statutorily-mandated peremptory strikes to remove two of the jurors. The defendant then objected to the seating of the third juror. The Court of Appeals for the Seventh Circuit ultimately concluded that the district court did not abuse its discretion in failing to strike the three jurors for cause. However, the Beasley court did note that because the peremptory strikes were designated as a matter of federal law, it could be

---

[0] As in the case at bar, the party in Carr argued that the district court impermissibly impaired its statutory right under 28 U.S.C. § 1870 to the exercise of three peremptory challenges. Id. at 831.
[0] We acknowledge that some of these cases were decided prior to Ross. However, because Ross is distinguishable, we believe that reliance on pre-Ross cases is not inappropriate.

29

argued that a district court's erroneous refusal to strike a juror for cause would deprive the defendant of a statutory peremptory challenge. Id. at 268 n.5. Additionally, in United States v. Munoz, 15 F.3d 395 (5th Cir.), cert. denied, __ U.S. __, 114 S. Ct. 2149 (1994), the district court refused to remove a juror who was challenged for cause, thus requiring the defendant to exercise a peremptory strike. Although concluding that the district court did not abuse its discretion, the Court of Appeals for the Fifth Circuit observed that Ross applied constitutional standards in reviewing a state criminal conviction. It expressed doubt as to whether Ross controls a case on direct appeal and further noted that reversal may be proper even though the error alleged at trial was not of constitutional magnitude. Id. at 398 n.1. The Munoz court continued, "[w]hile peremptory challenges . . . may not be constitutionally required, it does not follow that a trial court's wrongful reduction of the number so provided is not reversible error on direct appeal." Id.

Kirk argues that all other courts of appeals that have addressed the constitutional implications of the use of peremptory challenges, whether raised in habeas corpus proceedings[0] or in direct criminal appeals,[0] have limited their

[0]The habeas corpus cases are distinguishable because a federal court may overturn a state judgment only for constitutional violations. See Callins v. Collins, 998 F.2d 269, 277 (5th Cir. 1993) (requires a showing of prejudice when alleging due process violation); Bannister v. Armontrout, 4 F.3d 1434, 1443 (8th Cir. 1993) (citing Ross for proposition that one must show prejudice when alleging a Sixth Amendment violation), cert. denied, __ U.S. __, 115 S. Ct. 418 (1994); Heath v. Jones, 941 F.2d 1126, 1132-33

30

inquiry and review to the impartiality of the jury selected.  We

agree that all courts subsequent to Ross have correctly required

a showing of prejudice in response to an alleged constitutional

error before concluding that reversal is warranted.  However,

Kirk has failed to point to a single case from any court of

appeals that recognizes the distinction between constitutional

and statutory violations, and holds that Ross requires a showing

of prejudice for a statutory violation.⁰  For the reasons stated

(11th Cir. 1991) (in order to prevail on claim of denial of fair
and impartial jury, one must show prejudice), cert. denied, 502
U.S. 1077, 112 S. Ct. 981 (1992); Gaskins v. McKellar, 916 F.2d
941, 948-49 (4th Cir. 1990) (citing Ross for proposition that one
must demonstrate prejudice when alleging a Sixth Amendment
violation), cert. denied, 500 U.S. 961, 111 S. Ct. 2277 (1991).
⁰These cases fail to recognize the key distinction between
violation of the constitutional right to an impartial jury and
the deprivation of the federal statutory right to peremptory
challenges.  See United States v. Alexander, 48 F.3d 1477, 1483-
84 (9th Cir. 1995) (citing Ross for proposition that one must
show prejudice in order to prevail on a Sixth Amendment claim);
United States v. Mendoza-Burciaga, 981 F.2d 192, 197-98 (5th Cir.
1992) (no constitutional error absent a showing of prejudice),
cert. denied, __ U.S. __, 114 S. Ct. 356 (1993); United States v.
Farmer, 923 F.2d 1557, 1565 (11th Cir. 1991) (same).
⁰Although Kirk cites Kotler v. American Tobacco Co., 926 F.2d
1217 (1st Cir. 1990), vacated on other grounds, __ U.S. __, 112
S. Ct. 3019 (1992), reaffirmed, 981 F.2d 7 (1st Cir. 1992), for
the proposition that one must first show prejudice in the context
of a statutory violation, Kotler does not stand for that
proposition.  In that case, the court held that absent a showing
that a peremptory strike was impaired or denied, no reversal is
mandated.  Id. at 1226-27.  We have recognized a similar
requirement, see supra part II.B.2, that is, before one may
receive the remedy of reversal, one must first prove that the
right to exercise peremptory strikes has been denied or impaired.
    Additionally, Kirk cites United States v. McIntyre, 997
F.2d 687, 698 n.7 (10th Cir. 1993), cert. denied, __ U.S. __, 114
S. Ct. 736 (1994), for the proposition that a non-constitutional
or statutory violation only requires a harmless error analysis,
and not per se reversal.  In that case, the court held that the
district court did not abuse its discretion in failing to excuse
the juror for cause.  Id. at 698.  In dicta, the court noted that

31

above, we find Ross and other cases dealing with alleged constitutional errors to be distinguishable from the case at bar.

Finally, Kirk argues that even if the requirement imposed by Ross of showing jury bias only applies to constitutional claims, its logic should nonetheless be extended to any statutory impairment claim, that is, a party should always be required to show that the jury that actually sat was biased. We decline to extend Ross in the absence of further guidance from the Supreme Court. We hold that the remedy for impairment or denial of the statutory right to exercise peremptory challenges is per se reversal without any requirement of proving prejudice.

III.  Prior Testimony of Out of Court Witness

---

even if the district court had erroneously denied the challenge for cause, no reversal was required because the defendant had failed to show that the jury was impartial. Id. at 698 n.7. To the extent that this dicta is in tension with our resolution of this matter, we reject this argument.

Although Kirk did not bring it to our attention, we are aware of a recent case from the Court of Appeals for the Ninth Circuit that is at odds with our decision today. In United States v. Annigoni, __ F.3d __, 1995 WL 338649 (9th Cir. 1995), the defendant attempted to exercise a peremptory strike against an Asian male, and the district court denied the strike based on Georgia v. McCollom, __ U.S. __, 112 S. Ct. 2348, 2357 (1992). The court concluded that the district court erred in disallowing the peremptory strike, because there was an insufficient factual basis from which to conclude that the strike had been motivated by racial prejudice. Annigoni, 1995 WL 338649, at *4. Turning to the remedy for such an erroneous denial of a peremptory strike, the court, in part relying on Ross, concluded that a "harmless error" analysis rather than per se reversal was mandated. We respectfully disagree with that decision. Because Ross does not control the case of a statutory violation, any reliance on Ross in this context is misplaced.

32

During the liability phase of the trial, Owens-Corning offered the expert testimony of Dr. Harry Demopoulos to prove that the overwhelming majority of asbestos-induced mesotheliomas are caused by crocidolite asbestos fiber. This testimony supported Owens-Corning's defense that its product, Kaylo, which did not contain crocidolite fiber, could not have caused the decedent's mesothelioma. Over Owens-Corning's objection, Kirk was permitted to read to the jury the prior trial testimony of Dr. Louis Burgher from an unrelated New Jersey State Court asbestos action in 1992. In that case, Dr. Burgher had been an expert witness for Owens-Corning and testified on cross-examination that it was possible for mesothelioma to be caused by chrysotile fibers contaminated with tremolite. Kirk was clearly attempting to discredit Owens-Corning's defense offered through Dr. Demopoulos by revealing to the jury that Owens-Corning's expert witness in a previous case voiced a different and contradictory opinion as to which asbestos fibers cause mesothelioma. After the jury returned a verdict in favor of Kirk, Owens-Corning made a post-trial motion for a new trial based in part on the alleged admission of hearsay evidence, i.e., the prior testimony of Dr. Burgher in an unrelated case. The district court denied this motion.

Normally, when a new trial is sought by reason of a district court's alleged error in allowing the introduction of evidence, we review for abuse of discretion. Lippay v. Christos, 996 F.2d 1490, 1496 (3d Cir. 1993) (citing Link v. Mercedes-Benz, 788 F.2d 918, 921-22 (3d Cir. 1986)). However, where as here the

ruling on admissibility of hearsay evidence implicates the application of a legally set standard, our review is plenary. Id.; see also United States v. McGlory, 968 F.2d 309, 332 (3d Cir. 1992).

Owens-Corning argues that the district court erred in allowing the jury to hear this evidence in light of the fact that it was hearsay. Although the record is at best vague as to what the district court's basis was for allowing such testimony, Kirk attempts to justify its admission under two distinct theories -- either the testimony was not hearsay pursuant to Rule 801(d)(2)(C) of the Federal Rules of Evidence or it was hearsay, but subject to an exception pursuant to Rule 804(b)(1).[0]

A. Rule 801(d)(2)(C) of the Federal Rules of Evidence

Kirk first attempts to justify the district court's admission of the prior trial testimony of Dr. Burgher by arguing it is an admission by a party opponent since it is a statement by a person authorized by Owens-Corning to speak concerning mesothelioma and is thus not hearsay. See Fed. R. Evid. 801(d)(2)(C)[0]; see also Precision Piping v. E.I. du Pont de

_____

[0]Alternatively, Kirk argues that assuming arquendo it was error to admit the testimony of Dr. Burgher, it was harmless error because the weight of the medical testimony of Kirk's other witnesses was overwhelming. In light of our decision to remand for a new trial because the jury was improperly constituted, we need not address whether any evidentiary errors may be harmless.
[0]Rule 801(d) of the Federal Rules of Evidence states in relevant part:

(d) Statements which are not hearsay. A statement is not hearsay if --

34

<u>Nemours</u>, 951 F.2d 613, 619 (4th Cir. 1991) (authority in the context of 801(d)(2)(C) means "authority to speak" on a particular subject on behalf of someone else).  In her brief, Kirk argues that Dr. Burgher was authorized by Owens-Corning to offer his expert opinion about medical literature regarding mesothelioma and fiber type.  Appellee's Brief at 21.  At oral argument, Kirk suggested that the testimony of any expert that Owens-Corning has previously used in a trial can be used in future litigation against it as an authorized admission.

In support of this proposition, Kirk cites <u>Collins v. Wayne Corp.</u>, 621 F.2d 777, 782 (5th Cir. 1980), which held that deposition testimony of an expert employed by a bus manufacturer to investigate an accident was an admission under 801(d)(2)(C). However, in that case the court made a finding that the expert witness was an agent of the defendant and the defendant employed the expert to investigate and analyze the bus accident.  <u>Id.</u>  The court determined that in giving his deposition, the expert was performing the function that the manufacturer had employed him to perform.  As such, the court concluded that the expert's report of his investigation and his deposition testimony in which he explained his analysis and investigation was an admission of the defendant.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Theriot v. J. Ray McDermott & Co., Inc.</u>, 742 F.2d 877, 882 (5th Cir. 1984) (citing <u>Collins v. Wayne</u>

---

(2) Admission by party-opponent.  The statement is offered against a party and is . . .
        (C) a statement by a person <u>authorized by the party</u> to make a statement concerning the subject.

Fed. R. Evid. 801(d)(2)(C) (emphasis added).

35

<u>Corp.</u>, 621 F.2d 777, 781-82 (5th Cir. 1980)) (explaining that <u>Collins</u> holds that "an agent's statement, made within the scope of his authority . . . is admissible against the principal as an admission").

Kirk misconstrues the entire premise of calling expert witnesses. In theory, despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. Thus, one can call an expert witness even if one disagrees with the testimony of the expert. Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony. <u>See</u> <u>Sabel v. Mead Johnson & Co.</u>, 737 F. Supp. 135, 138 (D. Mass 1990). Since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent. <u>See</u> <u>Restatement (Second) of Agency</u> § 1 cmt. a (1958) ("The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act.")

Because an expert witness is charged with the duty of giving <u>his or her</u> expert <u>opinion</u> regarding the matter before the court, we fail to comprehend how an expert witness, who is not an

36

agent of the party who called him, can be authorized to make an admission for that party.[0]  See Michael H. Graham, Federal Practice and Procedure: Evidence § 6722, at 502 (Interim Edition 1992) (the authority of the agent to speak as to a subject must be established at trial).  We are unwilling to adopt the proposition that the testimony of an expert witness who is called to testify on behalf of a party in one case can later be used against that same party in unrelated litigation, unless there is a finding that the expert witness is an agent of the party and is authorized to speak on behalf of that party.  Accordingly, we find Dr. Burgher's prior trial testimony to be hearsay in the context of the present trial.

B.  Rule 804(b)(1) of the Federal Rules of Evidence

Because the testimony of Dr. Burgher is hearsay, we must next inquire whether it falls within any of the hearsay exceptions enumerated in the Federal Rules of Evidence.  Kirk argues that Dr. Burgher's testimony falls within the former testimony hearsay exception of Rule 804(b)(1).  In order for former testimony to be admissible as an exception to the hearsay rule: (1) the declarant must be unavailable; (2) testimony must be taken at a hearing, deposition, or civil action or proceeding;

_____

[0]In the case before us, unlike Collins, there was no explicit finding on the record that Dr. Burgher was an agent of the defendant.  To the extent that Collins holds that an expert witness who is hired to testify on behalf of a party is automatically an agent of that party who called him and consequently his testimony can be admitted as non-hearsay in future proceedings, we reject this rule.

37

and (3) the party against whom the testimony is now offered must have had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.  See Fed. R. Evid. 804(a)(5), (b)(1).[0]  Because Dr. Burgher testified in open court during the state court action, no one disputes that the second element has been satisfied.

Regarding the first element, we note that it is an abuse of discretion for a district court to admit former testimony into evidence under Rule 804(b)(1) without a finding of unavailability.  See O'Banion v. Owens-Corning Fiberglas Corp., 968 F.2d 1011, 1014 (10th Cir. 1992) (district court abused its discretion in admitting former testimony of expert where there

---

[0]Rule 804 of the Federal Rules of Evidence states in relevant part:

(b) Hearsay exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony.  Testimony given as a witness at another hearing of the same or different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1) (emphasis supplied).

"Unavailability" is defined in Rule 804 as follows:

(a) Definition of unavailability.  "Unavailability as a witness" includes situations in which the declarant --

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means.

Fed. R. Evid. 804(a)(5) (emphasis supplied).

38

was no showing of unavailability). Because there was no finding on the record as to unavailability, if the district court based admitting this testimony on Rule 804(b)(1), we hold that the district court abused its discretion in allowing this former testimony into evidence.

Normally, our inquiry would end here after determining that former testimony cannot be admitted absent specific findings of unavailability. However, because of the likelihood that an offer may be made during the retrial of this matter to admit this testimony as former testimony, we believe further discussion is warranted.

We observe that it is the proponent of the statement offered under Rule 804 who bears the burden of proving the unavailability of the declarant. United States v. Eufracio-Torres, 890 F.2d 266, 269 (10th Cir. 1989), cert. denied, 494 U.S. 1008, 110 S. Ct. 1306 (1990) (citing Ohio v. Roberts, 448 U.S. 56, 65, 100 S. Ct. 2531, 2538-39 (1980)); 2 John William Strong et al., McCormick on Evidence § 253, at 134 (4th ed. 1992) ("The proponent of the hearsay statement must . . . show that the witness cannot be found"). We can find nothing in the record that indicates any "reasonable means" employed by Kirk to procure the services of Dr. Burgher so that he might testify at trial. See McCormick § 253, at 134 (mere absence of the declarant, standing alone, does not establish unavailability); see also Moore v. Mississippi Valley State University, 871 F.2d 545, 552 (5th Cir. 1989) (deposition inadmissible in civil trial where no evidence to establish unavailability offered).

Kirk claims that Dr. Burgher, who is a resident of Nebraska, was beyond her ability to subpoena and was thus unavailable.  See Fed. R. Civ. P. 45(c)(3)(A)(ii).[0]  However, Kirk made no independent attempt to contact Dr. Burgher, offer him his usual expert witness fee, and request his attendance at trial.[0]  Because Dr. Burgher was never even as much as contacted, Kirk has failed to prove that she used "reasonable means" to enlist his services.

---

[0]Rule 45 of the Federal Rules of Civil Procedure states in relevant part:

(c) Protection of Persons Subject to Subpoenas.
   (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it --
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person . . . .

Fed. R. Civ. P. 45(c)(3)(A)(ii).
[0]At oral argument, Kirk argued that it was the responsibility of Owens-Corning to locate and contact Dr. Burgher and establish his availability because the district court requested Owens-Corning to determine whether he would be available to testify. To the extent that the district court placed the burden on Owens-Corning to establish the unavailability of Dr. Burgher, the district court made an error of law in shifting the burden of proof.  Kirk then articulated what we term a "convenience" argument, that is, she argued that Dr. Burgher was Owens-Corning's expert and Owens-Corning was in a better position to locate Dr. Burgher because it had Dr. Burgher's telephone number. To the extent that Kirk is advocating that Owens-Corning should undertake the task of locating a witness for Kirk so that she may use that testimony against Owens-Corning, we reject any such notion.  For the same reasons we protect an attorney's work product from discovery, see Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 394 (1947) ("Inefficiency, unfairness, and sharp practices would inevitably develop . . . .  The effect on the legal system would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served."), we do not believe that Owens-Corning had any duty to assist Kirk in preparing her case.

We next address whether Owens-Corning had an opportunity and similar motive to develop the testimony of Dr. Burgher at the prior unrelated state court trial.[0]  The similarity of motive requirement assures "that the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do at trial if the witness were available to be examined by that party."  United States v. Salerno, 937 F.2d 797, 806 (2d Cir. 1991); see also 2 Steven A. Saltzburg & Michael M. Martin, Federal Rules of Evidence Manual 400 (5th ed. 1990) ("The way to determine whether or not motives are similar is to look at the similarity of the issues and the context in which the opportunity for examination previously arose.").

There was no finding by the district court that Owens-Corning had an opportunity and similar motive to examine Dr. Burgher.  Further, during oral argument, counsel for Kirk indicated that the only document before the district court from the state court trial was the transcript of Dr. Burgher's testimony.  The district court did not have the complaint, answer, or jury charge from the state court proceedings.  Thus, even if the district court had attempted to make a finding as to opportunity and similar motive, it would have been unable to reach a well-reasoned conclusion based on the information before

---

[0]Again, although we need not reach this issue absent a finding of unavailability, because of the likelihood that an offer may be made during the retrial to admit this evidence as former testimony, we believe further discussion is warranted.

41

the district court.[0]  See McCormick § 304, at 317 (courts must

look to the operative issue in the earlier proceeding).

Accordingly, we must conclude that Kirk failed to prove that

Owens-Corning had an opportunity and similar motive to examine

Dr. Burgher.


## IV. Introduction of Interrogatory of Settled Co-Defendant

Kirk settled the instant action with Garlock and

several other defendants prior to trial.  At trial, Owens-Corning

sought in its cross-claim to prove that the decedent was exposed

to products made by Garlock.  If the jury were to conclude that

the decedent's injuries had been caused in whole or part by

exposure to Garlock products, then Owens-Corning could eliminate

or substantially reduce its liability.  Conversely, it was in

Kirk's financial interest to prove that the decedent was exposed

to only Owens-Corning products.  In an effort to rebut the

testimony of an Owens-Corning witness who testified that Garlock

gaskets were present in the New York shipyard during the years

that the decedent worked there, Kirk read into evidence an

interrogatory response which was prepared and filed by Garlock in

_____

[0]For instance, the statement elicited from Dr. Burgher during
cross-examination at the state trial may not have warranted
redirect by Owens-Corning in light of its theory of defense.  See
McCormick § 302, at 307 ("Circumstances may differ sufficiently
between the prior hearing and the present trial to bar admission
. . . as where questions on a particular subject would have been
largely irrelevant at the earlier proceeding.").  Because we do
not have the pleadings, we cannot determine whether an
opportunity and similar motive existed.

defense of this action.  Of course, at the time this interrogatory was read to the jury, Garlock was no longer a party to this lawsuit.  Specifically, counsel for Kirk read the following statement to the jury:

> Since Garlock products are bonded and/or encapsulated and treated in such a manner that they do not, when used in the manner for which they were intended, emit meaningful levels of asbestos dust and fibers, no restrictions or limitations on use are necessary.

App. at 513.  In response to Owens-Corning's closing remarks, counsel for Kirk reminded the jury:

> I read you from the Garlock interrogatory, Garlock product is bonded, encapsulated, it does not emit dust.

App. at 545.

Owens-Corning argues that the district court erred in admitting this interrogatory response because the interrogatory answer was pure hearsay.  Kirk attempts to justify the admission of this interrogatory response under the catch-all or residual exception, Rule 803(24) of the Federal Rules of Evidence.[0]  As

---

[0]Rule 803 of the Federal Rules of Evidence states in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

    . . .

Other exceptions.  A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes

43

stated previously, our standard of review is plenary where the admissibility of hearsay evidence "implicates the application of a legally set standard." See supra part III.

As a preliminary matter, we note that the plain language of the rule requires the proponent of the hearsay statement to put the adverse party on notice that the proponent intends to introduce the statement into evidence. We have interpreted this to mean that the proponent must give notice of the hearsay statement itself as well as the proponent's intention specifically to rely on the rule as a grounds for admissibility of the hearsay statement. United States v. Pelullo, 964 F.2d 193, 202 (3d Cir. 1992) (citing United States v. Furst, 886 F.2d 558, 574 (3d Cir. 1989)). Even assuming arguendo that Owens-Corning was on notice that Kirk intended to introduce this evidence at trial, we observe from the record that Kirk never gave notice to Owens-Corning that she intended to introduce this evidence under Rule 803(24). App. at 512. We recognize that the advance notice requirement of Rule 803(24) can be met where the proponent of the evidence is without fault in failing to notify his adversary and the trial judge has offered sufficient time, by means of granting a continuance, for the opponent to prepare to contest its admission. See United States v. Bailey, 581 F.2d

known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 803(24) (emphasis added).

44

341, 348 (3d Cir. 1978) (the purposes of the rule and the requirement of fairness are satisfied under such circumstances). Because of the lack of notice by Kirk that she intended to rely on Rule 803(24) and the lack of a showing by Kirk as to why it was not possible to provide Owens-Corning with notice, the district court erred in admitting this evidence at trial.

Turning to the substance of the rule itself, we note that in order for the hearsay statement to be admitted, it must have "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 803(24); see also Michael H. Graham, Federal Practice and Procedure: Evidence § 6775, at 737-39 (Interim Edition 1992) (factors bearing on trustworthiness include the declarant's partiality, i.e., interest or bias). Owens-Corning argues that the interrogatories of Garlock lack trustworthiness and are self-serving. Kirk submits that the interrogatory answers are trustworthy because they are signed and sworn under penalty of perjury.[0] We find that an interrogatory response of a co-defendant who is seeking to avoid liability lacks the "circumstantial guarantees of trustworthiness" that are contemplated by Rule 803(24) of the Federal Rules of Evidence. Garlock had every incentive to set forth the facts in a light

---

[0]There is nothing in the record to indicate that the district court made any findings as to the reliability of the Garlock interrogatories. See United States v. Chu Kong Yin, 935 F.2d 990, 1000 (9th Cir. 1991) (requiring specific findings regarding the requisite elements of Rule 803(24)); United States v. Tafollo-Cardenas, 897 F.2d 976, 980 (9th Cir. 1990) (district court must find that the statements met the requirements of the rule in order for the appellate court to consider the admissibility of the statement under 803(24)).

45

most favorable to itself, while at the same time still answering the interrogatories truthfully.  See United States v. DeLuca, 692 F.2d 1277, 1285 (9th Cir. 1982) (excluding statement under residual hearsay exception because of motive to exculpate oneself after indictment or investigation).  Using these interrogatory responses to prove that Garlock products could not have caused the decedent's illness without the opportunity for cross-examination implicates many of the dangers the hearsay rule is designed to prevent.  Accordingly, the district court erred in admitting this evidence.

## V.  Delay Damages

Finally, Owens-Corning argues that it was improper as a matter of law for the district court to award delay damages to the plaintiff pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure because it is a procedural rule and should not be applied by federal courts sitting in diversity.  Owens-Corning argues in the alternative that even if it is permissible for a federal court sitting in diversity to award delay damages pursuant to Rule 238, it was improper here because: (1) the entire delay was caused by the plaintiff's strategic decision to file simultaneous federal and state court actions and her failure to request a remand of the federal action from the multidistrict docket when settlement negotiations reached an impasse and (2) the district court miscalculated the damage award in failing to account for a delay of approximately two years that was caused by a judicial stay imposed by the Panel on Multidistrict Litigation.

Owens-Corning maintains that because it was not responsible for the delay, it should not be required to pay delay damages for that period.

### A. Rule 238 of the Pennsylvania Rules of Civil Procedure -- Substantive or Procedural?

First, we must address Owens-Corning's argument that a federal court sitting in diversity cannot apply Rule 238 of the Pennsylvania Rules of Civil Procedure because it is a procedural rather than a substantive rule. Yet, ultimately, Owens-Corning concedes, as it must, that this question has already been decided by this Court in Fauber v. Kem Transportation and Equipment Co., 876 F.2d 327 (3d Cir. 1989). In that case, we held that Rule 238 is substantive and must be followed by federal courts sitting in diversity cases. Id. at 328. Counsel is thus implicitly asking this panel to overrule Fauber. We note that this Court's Internal Operating Procedures prohibit a panel of this Court from overruling a published opinion of a previous panel. See Internal Operating Procedure Rule 9.1 ("[T]he holding of a panel in a reported opinion is binding on subsequent panels."). Because we are bound by Fauber, and in any event do not question its wisdom, we reiterate that it is proper for a federal district court sitting in diversity to award delay damages to a plaintiff under Rule 238 of the Pennsylvania Rules of Civil Procedure.

### B. Did Plaintiff Cause Delay?

47

Second, Owens-Corning maintains that Kirk was responsible for the delay because she filed simultaneous federal and state court actions and additionally failed to make an application to remand the federal action from the multidistrict docket when settlement negotiations proved fruitless.

Our review of the applicability of Rule 238 in a diversity case is plenary.  <u>Fauber</u>, 876 F.2d at 329.  Rule 238 of the Pennsylvania Rules of Civil Procedure states in relevant part:

> (a)(1) At the request of the plaintiff in a civil action seeking monetary relief for . . . death[,] . . . damages for delay shall be added to the amount of compensatory damages awarded against each defendant . . . found to be liable to the plaintiff in the verdict of a jury . . . .
>      (2) Damages for delay shall be awarded for the period of time
>          (i) in an action commenced before August 1, 1989, from the date the plaintiff first filed a complaint or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the . . . verdict . . . .
>      (3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.
>   (b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) <u>shall exclude the period of time</u>, if any,
>      (1) <u>after which the defendant has made a written offer</u> of
>          (i) settlement in a specified sum with prompt cash payment to the plaintiff, or
>          (ii) a structured settlement underwritten by a financially responsible entity, and continued that offer in effect for at least ninety days or until

> commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; <u>or</u>
> (2) <u>during which the plaintiff caused delay of the trial</u>.

Pa. R. Civ. P. 238 (1988) (emphasis added).

According to the plain language of the rule, a defendant must pay delay damages unless the delay falls within the excludable time as set forth in the rule. Owens-Corning concedes that it did not make a settlement offer which would satisfy the rule. Thus, the only other way for the defendant to be relieved from paying delay damages would be if the plaintiff caused the delay.

According to Owens-Corning, but for the plaintiff's strategic decision to file a federal asbestos action, the matter could have been resolved long ago in state court. Here, Kirk would have been forced to abandon her remedy in federal court and seek relief only in the state forum. To adopt the rule of law as advocated by Owens-Corning, we would be required to hold that delay is per se attributable to a plaintiff anytime a plaintiff files a diversity action in federal court when a suitable state forum exists. Nothing in Rule 238 contemplates that a plaintiff must forgo any rights in order to be entitled to delay damages, and we are unwilling to adopt such a proposition.

In support of its argument that Kirk was responsible for the delay in failing to request a remand from the

49

multidistrict docket, Owens-Corning relies on Babich v. Pittsburgh & New England Trucking Co., 386 Pa. Super. 482, 563 A.2d 168 (Pa. Super. Ct. 1989). In that case, the plaintiff's motion for delay damages pursuant to Rule 238 was denied by the trial court and plaintiff appealed. Babich, 386 Pa. Super. at 487, 563 A.2d at 171. In assessing who was responsible for the almost seven year delay between the commencement of suit and the jury verdict, the court observed:

> [T]he chief reasons for delay in this case cannot be attributed to defendants. [One of the defendants] filed a Chapter 11 bankruptcy in federal court six months after [plaintiff's] complaint was filed and [plaintiff] did not successfully obtain relief from the automatic stay until approximately two years and four months later despite cooperation from counsel for the bankruptcy and counsel for the insurance company. The other primary delay in the case was [plaintiff's] failure to place the case at issue in a speedy fashion. [Plaintiff] fails to point to any delay attributable to defendants and we find none upon review of the record.

Babich, 386 Pa. Super. at 487, 563 A.2d at 171.

Owens-Corning argues that because Kirk did not seek a remand from the multidistrict docket, she failed to obtain relief from the MDL stay just as the plaintiff in Babich failed to obtain relief from the automatic stay. Owens-Corning's reliance on Babich is misplaced. In that case plaintiff could have sought relief and moved the trial along, because opposing counsel was cooperating with and assisting counsel. Here, however, according to Judge Weiner's Pretrial Order, the case could be remanded for trial only if there was a finding that the defendant was acting

50

in bad faith during the settlement negotiations.  To the extent that Owens-Corning is found to have acted in bad faith, this would militate against a finding that delay was caused by the plaintiff.

C.  Is Delay Not Caused By The Defendant Excludable?

Third, Owens-Corning argues that because the delay was caused by the MDL Order, it offends traditional notions of fair play and due process to make a defendant pay for another's delay. Owens-Corning asks that the award of delay damages be recalculated and further maintains that it is unconstitutional to impose delay damages on it for this time period because it was never acting in bad faith and the delay was caused by the court. Were we to adopt the rule of law as articulated by Owens-Corning, we would have to redraft Rule 238(b)(2) to state "during which the defendant did not cause the delay of the trial," instead of "during which the plaintiff caused delay of the trial."  We are not so inclined and we find that the plaintiff caused no delay of the trial.

Owens-Corning also argues that notwithstanding the language of the rule, requiring it to pay for delay caused by the judiciary is a violation of due process.  Owens-Corning fails to comprehend the theory underlying Rule 238.  Delay damages merely compensate a plaintiff for money that he or she would have earned on the award if he or she had promptly received it.  Costa v. Lauderdale Beach Hotel, 534 Pa. 154, 160, 626 A.2d 566, 569 (Pa. 1993).  The rule also functions to prevent a defendant from being

51

unjustly enriched by keeping interest that could be earned during the litigation process on what is essentially the plaintiff's money. Id. n.6. We find no merit to Owens-Corning's argument that delay damages violate due process in this instance. Accordingly, we find no error in the district court's decision to award delay damages to the plaintiff.

## VI. Conclusion

The refusal to remove two jurors who were challenged for cause was an abuse of discretion. Because the defendant was required to waste two of its peremptory strikes in order to remedy this error, a per se reversal is required. Allowing into evidence the prior testimony of a witness in an unrelated state court trial was error, as was permitting the introduction into evidence of an answer to an interrogatory by a settled co-defendant. Accordingly, we will reverse the judgment of the district court and remand the matter to the district court for a new trial. Costs taxed against Kirk.